No. 23-1671

_____

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

_____

**DANA NESSEL, Attorney General of the State of Michigan, on behalf of the People of the State of Michigan,**

*Plaintiff-Appellant*,

v.

**ENBRIDGE ENERGY, LIMITED PARTNERSHIP; ENBRIDGE ENERGY COMPANY, INC.; and ENBRIDGE ENERGY PARTNERS, L.P.,**

*Defendant-Appellee.*

_____

Appeal from the United States District Court
Western District of Michigan, Southern Division
Case No. 21-cv-01057

_____

**BRIEF FOR THE STATES OF CONNECTICUT, DELAWARE, HAWAII, ILLINOIS, MASSACHUSETTS, MINNESOTA, NEW JERSEY, NEW MEXICO, NEW YORK, OREGON, PENNSYLVANIA, RHODE ISLAND, WASHINGTON, AND THE DISTRICT OF COLUMBIA AS AMICI CURIAE IN SUPPORT OF PLAINTIFF-APPELLANT**

_____

Joseph T. Heegaard (MN Bar No. 0401544)
Special Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 900
St. Paul, MN 55101-2127
(651) 583-6667
joseph.heegaard@ag.state.mn.us

Counsel for Amici Curiae

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

STATEMENT OF IDENTIFICATION  AND INTEREST OF AMICI CURIAE ... 1

SUMMARY OF ARGUMENT ................................................................... 1

ARGUMENT ......................................................................................... 2

NO FEDERAL QUESTION EXISTS SUBSTANTIAL ENOUGH TO DEPRIVE THE STATE ITS SOVEREIGNTY TO HEAR STATE-LAW CLAIMS REGARDING STATE PROPERTY BROUGHT BY A STATE OFFICIAL IN STATE COURT. ............ 3

    A.    Federal Law Strongly Disfavors Removal. ........................................... 3

    B.    The Complaint Asserts Only State-Law Claims. ................................. 5

    C.    *Grable*'s Limited Exception to the Well-Pleaded Complaint Rule Does Not Apply Here. .............................................................. 9

    D.    Federal Common Law does not Provide an Independent Basis for Removal. ............................................................................. 14

    E.    Enbridge Cannot Rely on Complete Preemption for Removal. .......... 15

        1.    The Submerged Lands Act ....................................................... 17

        2.    The Pipeline Safety Act ........................................................... 18

CONCLUSION ...................................................................................... 20

CERTIFICATE OF COMPLIANCE ........................................................... 25

CERTIFICATE OF SERVICE .................................................................. 26

# TABLE OF AUTHORITIES

## CASES

*Arno v. Commonwealth*, 931 N.E.2d 1 (Mass. 2010) .................................................7

*Beneficial Nat. Bank v. Anderson*, 539 U.S. 1 (2003) ............................................16

*Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988) ................................................14

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987) ........................................ 5, 6, 10

*City of Hoboken v. Chevron Corp.,* 45 F.4th 699 (3d Cir. 2022), *cert. denied sub nom. Chevron Corp. v. City of Hoboken*, 143 S. Ct. 2483 (2023) ......... 16, 17

*Cnty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934, 938 (N.D. Cal. 2018), *aff'd in part, appeal dismissed in part*, 960 F.3d 586 (9th Cir. 2020), *reh'g en banc denied* (Aug. 4, 2020), *cert. granted and vacating judgment*, 141 S. Ct. 2666 (2021), 32 F.4th 733 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1797 (2023).................................................................................................................13

*Coyne v. Am. Tobacco Co.*, 183 F.3d 488 (6th Cir. 1999) .......................................3

*Empire HealthChoice Assurance, Inc. v. McVeigh*, 396 F.3d 136 (2d Cir. 2005), *aff'd*, 547 U.S. 677 (2006) ..............................................................................15

*Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677 (2006) ................9

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1 (1983)....................................................................2, 6

*Glass v. Goeckel*, 703 N.W.2d 58 (Mich. 2005).......................................................8

*Gore v. Trans World Airlines*, 210 F.3d 944 (8th Cir. 2000) ..................................10

*Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)........................................................................... *passim*

*Gunn v. Minton*, 568 U.S. 251 (2013) ................................................................9, 12

*Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332 (6th Cir. 1989) ........................................................................12

*Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826 (2002)........8

*Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845 (6th Cir. 2023) ........... 3, 10, 16

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997) ..................... 4, 7, 8, 9

*In re Katrina Canal Litig. Breaches,* 524 F.3d 700 (5th Cir. 2008)........................2

*Jerome–Duncan v. Auto–By–Tel, L.L.C.*, 176 F.3d 904 (6th Cir.1999)...................3

*LG Display Co. v. Madigan*, 665 F.3d 768 (7th Cir. 2011)...................................2, 4

*Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31 (D. Mass. 2020)...........13

*Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178 (4th Cir. 2022),
     *cert. denied*, 143 S. Ct. 1795 (2023)...................................................... 13, 20

*Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804 (1986)..........................5, 11

*Merrick v. Diageo Americas Supply, Inc.*, 805 F.3d 685 (6th Cir. 2015).................6

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
     457 U.S. 423 (1982).........................................................................................4

*Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703 (8th Cir. 2023) ..................... 13, 16

*Miree v. DeKalb Cnty.*, 433 U.S. 25 (1977) ............................................................14

*Nevada v. Bank of Am. Corp.*, 672 F.3d 661 (9th Cir. 2012) ...............................2, 4

*New York ex rel. Jacobson v. Wells Fargo Nat'l Bank*,
     824 F.3d 308 (2d Cir. 2016) ..........................................................................9

*O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79 (1994).............................................15

*Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*,
     429 U.S. 363 (1977)........................................................................................7

*People ex rel. Scott v. Chicago Park Dist.*, 360 N.E.2d 773 (Ill. 1976)..................7

*Phillips Petroleum Co. v. Mississippi*, 484 U.S. 469 (1988)....................................8

*Pollard v. Hagan*, 44 U.S. 212 (1845) ......................................................7

*Portland Pipe Line Corp. v. City of S. Portland*,
   288 F. Supp. 3d 321 (D. Me. 2017)................................................19

*Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142 (D.R.I. 2019), *aff'd in part,*
   *appeal dismissed in part*, 979 F.3d 50 (1st Cir. 2020), *cert. granted and*
   *vacating judgment*, 141 S. Ct. 2666 (2021), 35 F.4th 44 (1st Cir. 2022), *cert.*
   *denied*, 143 S. Ct. 1796 (2023).......................................................14

*Rhode Island v. Shell Oil Prod. Co.*, 35 F.4th 44 (1st Cir. 2022),
   *cert. denied*, 143 S. Ct. 1796 (2023).......................................... 16, 17

*Rivet v. Regions Bank of Louisiana*, 522 U.S. 470 (1998) .........................................5

*Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318 (6th Cir. 2005).........................15

*Rodriguez v. Fed. Deposit Ins. Corp.*, 140 S. Ct. 713 (2020).................................14

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996).........................................4

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100  (1941).................................3

*Shoreline Shellfish, LLC v. Town of Branford,* 246 A.3d 470 (Conn. 2020) ...........7

*State v. Longyear Holding Co.*, 29 N.W.2d 657 (Minn. 1947) .................................8

*Texas MidStream Gas Servs. v. City of Grand Prairie*,
   608 F.3d 200 (5th Cir. 2010) .............................................. 18, 20

*Utah Div. of State Lands v. United States*, 482 U.S. 193 (1987)............................8

*Vaden v. Discover Bank*, 556 U.S. 49 (2009) .......................................................5, 8

*W. Virginia ex rel. McGraw v. CVS Pharmacy*,
   646 F.3d 169 (4th Cir. 2011) ........................................... 2, 4, 6

*Washington Gas Light Co. v. Prince George's Cnty.*,
   711 F.3d 412 (4th Cir. 2013) ........................................................18

**STATUTES**

Employee Retirement Income Security Act § 502, 29 U.S.C. § 1332 ...................21

Labor Management Relations Act § 301, 29 U.S.C. § 185 .....................................21

National Bank Act, 12 U.S.C. §§ 85, 86......................................................................21

Pipeline Safety Act, 49 U.S.C. § 60104................................................... 21, 23, 24, 25

Submerged Lands Act, 43 U.S.C. §§ 1311, 1314....................................... 10, 21, 22

## STATEMENT OF IDENTIFICATION
## AND INTEREST OF AMICI CURIAE

Amici curiae Connecticut, Delaware, Hawaii, Illinois, Massachusetts, Minnesota, New Jersey, New Mexico, New York, Oregon, Pennsylvania, Rhode Island, Washington, and the District of Columbia (collectively, "State Amici") submit this brief in support of Michigan Attorney General Nessel. State Amici have an interest in this appeal because it presents legal issues pertaining to when a defendant may remove a case filed by a state official in state court to enforce state law to federal court. These issues implicate state sovereignty, federalism, and states' development and administration of the public trust doctrine. State Amici also have an interest in ensuring that the Sixth Circuit decides the jurisdictional component of this appeal consistent with other circuits. State Amici file this brief pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure.

## SUMMARY OF ARGUMENT

This Court should reverse the district court's order denying Attorney General Nessel's motion for remand because, even if Enbridge's removal were timely (which it was not for all the reasons described in General Nessel's brief), Enbridge has failed to satisfy its burden to demonstrate that removal of the pure state-law claims pleaded in the complaint is authorized here. Indeed, the "well-pleaded complaint" rule presents an insurmountable hurdle because General Nessel's claims do not

1

necessarily arise under federal law and the narrow exceptions to the well-pleaded complaint rule—"*Grable* jurisdiction" or "complete preemption"—do not apply. *See Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318 (2005). A contrary conclusion would undermine the considerations of comity and principles of federalism that animate federal removal jurisprudence. *Id.*

## ARGUMENT

A fundamental principle to our federalist system of government is that state-law claims are tried in state court. Where a state is a plaintiff, this principle becomes even more fundamental. *LG Display Co. v. Madigan*, 665 F.3d 768, 774 (7th Cir. 2011). "[C]onsiderations of comity" make federal courts particularly "reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 21 n.22 (1983). Simply put, state-law claims brought by a state may be removed only in rare and special circumstances, not present here. *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012); *West Virginia ex rel. McGraw v. CVS Pharmacy*, 646 F.3d at 178-79 (4th Cir. 2011); *LG Display*, 665 F.3d at 774; *In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 706 (5th Cir. 2008).

As explained below, no valid claim for removal exists.  Enbridge has asserted a federal-law preemption defense.   But the mere assertion of a federal-law preemption defense—even a valid one—does not entitle a party to remove an action to federal court.  State courts are perfectly adequate forums to resolve such defenses. *Hudak v. Elmcroft of Sagamore Hills*, 58 F.4th 845, 853, 858 (6th Cir. 2023). Allowing a party to remove an action to federal court simply by mouthing the words "federal preemption" disturbs the balance of sovereignty between the states and the federal government.  As such, this court should reverse the district court's opinion denying General Nessel's remand motion.

## NO FEDERAL QUESTION EXISTS SUBSTANTIAL ENOUGH TO DEPRIVE THE STATE ITS SOVEREIGNTY TO HEAR STATE-LAW CLAIMS REGARDING STATE PROPERTY BROUGHT BY A STATE OFFICIAL IN STATE COURT.

### A.    Federal Law Strongly Disfavors Removal.

The burden of establishing a basis for removal of an action to federal court is on the party removing, *Jerome–Duncan v. Auto–By–Tel, L.L.C.*, 176 F.3d 904 (6th Cir.1999), and, accordingly, the right to remove is construed narrowly against removal.  *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109 (1941).  The removal jurisdiction of the federal courts is thus "scrupulously confined."  *Id.* at 109. As a result, all doubts concerning removal are resolved in favor of remand.  *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).  The strict policy against

removal and for remand protects the sovereignty of state governments and state judicial power. *Shamrock*, 313 U.S. at 108–09. Indeed, "the claim of sovereign protection from removal arises in its most powerful form," where, as here, the removed action is one brought by a state in state court to enforce state-law. *Nevada*, 672 F.3d at 676 (quotation omitted); *see also LG Display*, 665 F.3d at 774; *CVS Pharmacy*, 646 F.3d at 178-79.

The relatively late origin of federal-question jurisdiction means that the Framers always recognized the competency of state courts to handle federal questions. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 69-70 (1996) (explaining federal-question jurisdiction did not exist when Eleventh Amendment was passed). Federal courts "do not for that reason conclude that state courts are a less than adequate forum for resolving federal questions. A doctrine based on the inherent inadequacy of state forums would run counter to basic principles of federalism." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 275 (1997). For that reason, it is well settled that "[m]inimal respect for the state processes ... precludes any *presumption* that state courts will not safeguard federal constitutional rights." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).

The well-pleaded complaint rule permits federal jurisdiction only when a federal question appears on the face of the plaintiff's properly pleaded complaint.

*Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Jurisdiction exists "only when the plaintiff's statement of his own cause of action shows that it is based upon federal law," *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (cleaned up), and removal "may not be sustained on a theory that the plaintiff has not advanced," *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986).

Two exceptions to the well-pleaded complaint rule exist.  First, federal courts may exercise jurisdiction over state-law claims that "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Grable*, 545 U.S. at 314.  Second, "the artful pleading doctrine allows removal where federal law *completely* preempts a plaintiff's state-law claim." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998) (emphasis added). Neither of these jurisdictional bases apply here, as shown below.

### B.    The Complaint Asserts Only State-Law Claims.

General Nessel's complaint seeks to enjoin the continued operation of the Straits Pipelines based upon three state-law causes of action: the public trust doctrine (Counts I.A and I.B), the common law of public nuisance (Count II), and the Michigan Environmental Protection Act ("MEPA") (Count III).  Under the well-pleaded complaint rule, General Nessel is "the master of [her] claim[s]," and the

5

complaint's "exclusive reliance on state law" precludes removal here. *Caterpillar*, 482 U.S. at 392.

Cases brought by state officials alleging state-law claims in state courts should remain in state court except in unusual circumstances, not present here. Again, federal courts are particularly "reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd.*, 463 U.S. at 21 n.22. No clear rule demands federal jurisdiction here. If this Court were "to mandate that the State was not entitled to pursue its action in its own courts, [it] would risk trampling on the sovereign dignity of the State and inappropriately transforming what is essentially a [Michigan] matter into a federal case." *CVS Pharmacy*, 646 F.3d at 178.

The three claims raise issues purely of Michigan law. States define and uphold the public trust doctrine, public nuisance, and state-law causes of action, especially those pertaining to a state's natural resources. *See, e.g.*, *Merrick v. Diageo Americas Supply, Inc.*, 805 F.3d 685, 694 (6th Cir. 2015) ("Environmental regulation is a field that the states have traditionally occupied."). Here, as in other cases where states allege purely state-law claims, the claims arise from and are contoured by the unique value judgements of Michigan. Take, for example, General Nessel's public trust doctrine claims. State courts define and develop the scope of their public trust doctrine rights. *See*, *e.g.*, *Shoreline Shellfish, LLC v. Town of Branford*, 246 A.3d

6

470, 478 (Conn. 2020) (explaining public trust doctrine protects shellfishing grounds); *Arno v. Commonwealth*, 931 N.E.2d 1, 18 (Mass. 2010) (determining public trust doctrine imposed "condition subsequent" that private parcel be used for public purposes); *People ex rel. Scott v. Chicago Park Dist.*, 360 N.E.2d 773, 780 (Ill. 1976) ("The public trust doctrine . . . should not be considered fixed or static, but should be molded and extended to meet changing conditions and needs of the public").

General Nessel's claims concern Michigan's rights and responsibilities over its lands. The right to these lands "is a sovereign right, not a proprietary one" and the federal government has "nothing in [Michigan] but proprietary rights. They cannot put their foot in a state to claim jurisdiction without its consent." *Pollard v. Hagan*, 44 U.S. 212, 215–16 (1845). A state's title to these lands "is conferred not by Congress but by the Constitution itself.'" *Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 374 (1977). As such, if Enbridge were to prevail on the merits, Michigan's "sovereign interest in its lands and waters would be affected in a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury." *Idaho*, 521 U.S. at 287.

Indeed, "[i]t has been long established that the individual States have the authority to define the limits of the lands held in public trust and to recognize private rights in such lands as they see fit." *Phillips Petroleum Co. v. Mississippi*, 484 U.S.

7

469, 475 (1988). "Lands underlying navigable waters have historically been considered 'sovereign lands.' State ownership of them has been 'considered an essential attribute of sovereignty.'" *Idaho*, 521 U.S. 261, 283 (1997) (discussing origin from English law) (quoting *Utah Div. of State Lands v. United States*, 482 U.S. 193, 195–198 (1987)); *see also, e.g., Glass v. Goeckel*, 703 N.W.2d 58, 73 (Mich. 2005) (determining the public trust doctrine encompasses walking among the rights protected); *State v. Longyear Holding Co.*, 29 N.W.2d 657, 673 (Minn. 1947) (determining the public trust doctrine permitted state to remove ore from lakebeds).

Now, Enbridge asks this Court to find that lurking somewhere within this plainly state-law doctrine exists a substantial federal question "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). But the Constitution, Congress, and the Supreme Court have recognized that these lands are subject to state jurisdiction. 43 U.S.C. § 1311(a) (assigning lands beneath navigable waters to the states).

Further, "the well-pleaded complaint rule enables" General Nessel, having "eschew[ed] claims based on federal law, to have the cause heard in state court." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002). While a "complaint purporting to rest on state law . . . can be recharacterized as one 'arising under' federal law if the law governing the complaint is exclusively federal," *Vaden*, 556 U.S. at 61, here, the law governing the complaint arises exclusively from

the state.  To hold otherwise would "divest the State of its sovereign control over submerged lands, lands with a unique status in the law and infused with a public trust the State itself is bound to respect." *Idaho*, 521 U.S. at 283.  This Court should not enable Enbridge to undermine state sovereignty by evading the jurisdiction of the state it harmed.

### C.    *Grable*'s Limited Exception to the Well-Pleaded Complaint Rule Does Not Apply Here.

Enbridge's arguments for removal under *Grable* lack merit.  *Grable* allows for removal "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 314).  *Grable*'s exception to the well-pleaded complaint rule is narrow: it exists only for a "special and small category" of cases— those in which the state-law complaint is a wolf in sheep's clothing.  *Gunn*, 568 U.S. at 258 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 699 (2006)).

This case does not fall within the "special and small category" of cases contemplated by *Grable* and its progeny.  *Grable* applies only where the claim removed "is *affirmatively 'premised'* on a violation of federal law." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank*, 824 F.3d 308, 315 (2d Cir. 2016) (quoting *Grable*, 545 U.S. at 314) (emphasis added).  Even then, courts have not treated a

federal issue "as a password opening federal courts to any state action embracing a point of federal law." *Grable*, 545 U.S. at 314. Michigan's claims are not affirmatively premised on federal law. Instead, Enbridge tries to inject a federal question into a state-law matter. The only federal issues allegedly implicated by Michigan's state-law claims pertain to Enbridge's defenses. *See infra* Section E. But Enbridge "is not permitted to inject a federal question into an otherwise state-law claim and thereby transform the action into one arising under federal law." *Gore v. Trans World Airlines*, 210 F.3d 944, 948 (8th Cir. 2000). In sum, "the assertion of a federal defense does not transform a state claim into one that 'arises under' federal law," *Hudak*, 58 F.4th at 858, "even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393.

A brief review of *Grable* itself makes clear that the reasons the Supreme Court found justified removal in that case are not present here. In *Grable*, the Internal Revenue Service seized Grable's property to satisfy a federal tax delinquency and notified Grable by mail before selling the property to another party. *Grable*, 545 U.S. at 310-11. Grable brought a quiet title action in state court, asserting the other party's title was invalid because federal law required the IRS to notify Grable of the sale by personal service, not mail. *Id.* Because Grable's claim to title was "premised" on an affirmative claim that the IRS's notice violated federal law, proving the federal law violation was "an essential element of its quiet title claim."

10

*Id.* at 314-15.  As a result, *Grable* held that the federal government had a "*direct interest* in the availability of a federal forum to vindicate *its own* administrative action."  *Id.* at 315 (emphasis added).  Because resolution of the claim would have "only a microscopic effect on the federal-state division of labor," the Court determined federal jurisdiction was justified.  *Id.* at 314-15.

In so concluding, the Court distinguished the facts in *Grable* from the facts at issue in *Merrell Dow*, 478 U.S. 804, where the Court denied federal jurisdiction because there was no federal cause of action and permitting federal jurisdiction would have heralded "an enormous shift of traditionally state cases into federal courts."  *Id.* at 319.  In *Merrell Dow*, for example, plaintiffs filed a state-law negligence claim arguing that a drug sold by Merrell Dow Pharmaceuticals caused deformities in children.  *Merrell Dow*, 478 U.S. at 805–06.  Plaintiffs alleged that Merrell Dow violated the Federal Food, Drug, and Cosmetic Act's ("FDCA") misbranding provision because the drug's labeling provided no warning of its potential dangers.  *Id*.  Plaintiffs argued the FDCA violation both caused their injuries and presented a rebuttable presumption of negligence.  *Id.*  The FDCA, however, did not provide a cause of action for such violations.  *Id.* at 810.  Thus, the Court ordered remand of the matter back to state court, holding that a complaint alleging a federal violation as an element of a state cause of action, where Congress

has determined that there should be no federal cause of action for the violation, does not state a claim arising under federal law.  *Id.* at 817.

As the Court subsequently explained in *Grable*, its decision in *Merrell Dow* rested on the proposition that if a federal "standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action," which would be a "tremendous number of cases."  *Grable*, 545 U.S. at 318.  In *Grable*, however, no such threat to the federal-state balance of judicial responsibilities existed.

In summary, *Grable* specifically warned against opening the federal door to defendants who seek to remove state-law claims to federal court.  *Grable*, 545 U.S. at 318; *see also Gunn*, 568 U.S. at 264.  Because General Nessel pleaded only pure state-law claims in the complaint, the district court erred in denying the remand motion.  Indeed, it is inconsistent with this Court's opinion in *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, which held that a state-law claim based on MEPA[1]—one of the claims at issue here—was not subject to removal.  874 F.2d 332, 341 (6th Cir. 1989).

Enbridge's efforts to undermine states' jurisdiction over their own resources are not novel.  Fossil fuel companies around the country have attempted to remove

---

[1] "MEPA creates a state environmental common law that is unaffected by federal law and creates an independent state action that is unaffected by anything that happens in the federal sphere of government."  *City of Detroit*, 874 F.2d at 341.

12

cases brought against them in state court on similar theories, claiming that federal jurisdiction is proper because fossil fuels are subject to federal regulations. But every court (save one, later reversed, district court) entertaining these arguments has rejected them, holding that "*Grable* does not sweep so broadly." *Cnty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934, 938 (N.D. Cal. 2018), *aff'd in part, appeal dismissed in part*, 960 F.3d 586 (9th Cir. 2020), *reh'g en banc denied* (Aug. 4, 2020), *cert. granted and vacating judgment*, 141 S. Ct. 2666 (2021), 32 F.4th 733 (9th Cir. 2022) (affirming remand), *cert. denied*, 143 S. Ct. 1797 (2023). "[T]he mere existence of a federal regulatory regime [does not] mean that these cases fall under *Grable*." *Id.; see also Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 208 (4th Cir. 2022) ("Defendants' invocation of *Grable* jurisdiction and the foreign-affairs doctrine fails to pass legal muster."), *cert. denied*, 143 S. Ct. 1795 (2023); *Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703, 717 (8th Cir. 2023) (holding that Minnesota's claims are not removable under *Grable*); *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31, 44 (D. Mass. 2020) ("Contrary to ExxonMobil's caricature of the complaint, the Commonwealth's allegations do not require any forays into foreign relations or national energy policy. It alleges only corporate fraud."); *Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142, 151 (D.R.I. 2019) ("By mentioning foreign affairs, federal regulations, and the navigable waters of the United States, Defendants seek to raise issues . . . that are not perforce presented by

13

the State's claims."), *aff'd in part, appeal dismissed in part*, 979 F.3d 50 (1st Cir. 2020), *cert. granted and vacating judgment*, 141 S. Ct. 2666 (2021), 35 F.4th 44 (1st Cir. 2022) (affirming remand), *cert. denied*, 143 S. Ct. 1796 (2023).

In short, Enbridge's *Grable* arguments fail.

### D.  Federal Common Law does not Provide an Independent Basis for Removal.

If Enbridge argues that this case is removable because it implicates the federal common law of transboundary pollution, foreign affairs, or navigable waters, its argument must still fail because federal common law does not control here.  There is no federal common law that governs General Nessel's claims, and "strict conditions must be satisfied" before a new area of federal common law may be recognized.  *Rodriguez v. Fed. Deposit Ins. Corp.*, 140 S. Ct. 713, 717 (2020).  There must be a "significant conflict" between state law and a "uniquely federal interest," *Boyle v. United Techs. Corp.*, 487 U.S. 500, 507-08 (1988).  The interest and conflict cannot be "highly abstract" or "speculative." *Miree v. DeKalb Cnty.*, 433 U.S. 25, 32-33 (1977) (cleaned up).  The proponent of the purported federal common law must show a "specific, concrete federal policy or interest" and a clear conflict between state law and that interest.  *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 88 (1994).  But at issue here are uniquely state interests, none of which conflict with concrete, uniquely federal interests.  The interests of state sovereignty and protection

of Michigan's resources outweigh any speculative federal interest posited by Enbridge.

And, in any event, federal common law "does not necessarily create federal jurisdiction under 28 U.S.C. § 1331." *Empire HealthChoice Assurance, Inc. v. McVeigh*, 396 F.3d 136, 142 (2d Cir. 2005), *aff'd*, 547 U.S. 677 (2006). Instead, it does so only when "the federal common law issue appears on the face of the plaintiff's well-pleaded complaint." *Id*. at 43 n.4. That is not the case here where General Nessel only raised pure state-law claims.

### E.    Enbridge Cannot Rely on Complete Preemption for Removal.

To the extent Enbridge has adequately preserved a complete preemption argument, Br. of General Nessel at 71, and this Court deems it necessary to reach that issue, the Court should reject it. Complete preemption applies where the "preemptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 323 (6th Cir. 2005) (quotations omitted). Unlike ordinary preemption, which does not suffice for removal purposes, complete preemption entitles a defendant to remove the case to federal court. *Id.*

To determine whether a state-law claim is completely preempted, courts "ask whether Congress intended a federal statute to provide 'the exclusive cause of action

15

for the claim asserted and also set forth procedures and remedies governing that cause of action.'" *Am. Petroleum Inst.*, 63 F.4th at 710 (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)).  In other words, "Federal law completely preempts state law only when there is (1) a federal statute that (2) authorizes federal claims vindicating the same interest as the state claim." *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 707 (3d Cir. 2022) (quotation omitted), *cert. denied sub nom. Chevron Corp. v. City of Hoboken*, 143 S. Ct. 2483 (2023); *Rhode Island v. Shell Oil Prod. Co.*, 35 F.4th 44, 58 (1st Cir. 2022) ("the [statute] not providing an exclusive federal cause of action for suits against private polluters makes complete preemption a nonstarter") (quotation omitted), *cert. denied*, 143 S. Ct. 1796, 215 L. Ed. 2d 679 (2023).  And it applies only in the rarest of circumstances: the Supreme Court has found only three federal laws to be completely preemptive: § 301 of the Labor Management Relations Act, § 502(a)(1)(B) of the Employee Retirement Income Security Act, and §§ 85 and 86 of the National Bank Act.  *Hudak*, 58 F.4th at 852 (collecting authorities).  In each instance, the federal law provided the exclusive cause of action for the claim and provided mechanisms for a plaintiff to avail itself of a statutorily provided remedy.  *Id.*

Here, neither the Submerged Lands Act (SLA), 43 U.S.C. § 1314, nor the Pipeline Safety Act (PSA), 49 U.S.C. § 60104, come remotely close to supporting a

complete preemption defense.  Indeed, neither statute even supports an ordinary preemption claim on the facts of this case.

### 1.    The Submerged Lands Act.

The SLA does not completely preempt this area of law because it explicitly preserves states' power to manage their own submerged lands.  In that Act, Congress made clear:

> It is determined and declared to be in the public interest that (1) title to and ownership of the lands beneath navigable waters within the boundaries of the respective States, and the natural resources within such lands and waters, and (2) the right and power to manage, administer, lease, develop, and use the said lands and natural resources . . . [are] recognized, confirmed, established, and vested in and assigned to the respective States.

43 U.S.C. § 1311(a).  Based on the statute's plain text, the SLA neither provides the exclusive cause of action for the claim asserted, nor sets forth procedures and remedies governing the cause of action.  *See Hudak*, 58 F.4th at 852.  Thus, because the SLA does not provide an avenue for General Nessel to vindicate her interests, complete preemption is unavailing here.  *See City of Hoboken,* 45 F.4th at 707; *Rhode Island*, 35 F.4th at 58.

Enbridge's argument that Michigan is preempted from managing the use of its submerged lands because the federal government retained all "rights in and powers of regulation and control of said lands and navigable waters for the constitutional purposes of commerce, navigation, national defense, and international

17

affairs …" fares no better. 43 U.S.C. § 1314(a).  Defs. Answer to Pet. for Permission to Appeal at 4, *Nessel v. Enbridge*, No. 23-0102 (6th Cir., filed Mar. 13, 2023). Accepting Enbridge's possible argument that the SLA completely preempts General Nessel's state-law claims would contravene Congress's intent to vest states with the power to "manage, administer, lease, develop, and use" the lands in question. 43 U.S.C. § 1311(a).  Further, accepting Enbridge's argument would erode nearly two centuries of public trust doctrine jurisprudence that makes clear that states—not the federal government—protect and preserve public trust lands.  *See supra* Section B.

To conclude, the SLA does not completely preempt Michigan from managing its submerged lands in the way it sees fit—it does just the opposite.

### 2.    The Pipeline Safety Act

The PSA also does not reflect a congressional intent to completely preempt the state-law causes of action at issue here.  Instead, the PSA expressly *disclaims* federal authority to regulate "the location or routing of a pipeline facility."  49 U.S.C. § 60104(e); *see also Washington Gas Light Co. v. Prince George's Cnty.*, 711 F.3d 412, 421-22 (4th Cir. 2013) ("because the County Zoning Plans are not safety regulations, they do not come within the express preemption provision of the PSA"); *Texas MidStream Gas Servs. v. City of Grand Prairie*, 608 F.3d 200, 211-12 (5th Cir. 2010) (upholding municipal regulation on location of compressor stations against PSA-preemption challenge because, in part, it only "incidentally" affected

safety).  For that reason, courts have held that, under the PSA, "states and localities retain their ability to prohibit pipelines altogether in certain locations."  *Portland Pipe Line Corp. v. City of S. Portland*, 288 F. Supp. 3d 321, 430 (D. Me. 2017) (citation omitted).

Enbridge's possible resort to 49 U.S.C. § 60104(c), which provides that a "State authority may not adopt or continue in force *safety standards* for interstate pipeline facilities or interstate pipeline transportation" does not help it. (Emphasis added.).  While that provision *may* support an *ordinary* preemption claim for safety standards, it cannot support a complete preemption claim.  Again, it is well settled that Congressional intent to completely preempt state law "must be clear in the text of the statute."  *Baltimore v. BP P.L.C.*, 31 F.4th 178, 199 (4th Cir. 2022) (citation omitted).  And the Supreme Court has found complete preemption only where the statute "sets forth the elements" of the claim, and "prescribes the remedies available . . . and the procedures governing such a claim."  *Anderson*, 539 U.S. at 9; *see also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987).  But the PSA—on its face— does not prescribe such elements, remedies, or procedures.  To the contrary, the PSA expressly preserves Michigan's power to control the siting and routing of pipelines, and that is the only power General Nessel's claims seek to effectuate here.

Finally, the PSA only preempts certain state and local "safety standards."  49 U.S.C. § 60104(c).  A state decision about whether a company can locate and operate

a pipeline on state submerged lands, i.e., "the location or routing of a pipeline facility," *id.* § 60104(e), is qualitatively different from a state decision to regulate how a pipeline operator must design, construct, maintain, test, and operate the pipeline, i.e., a state "safety standard," *id.* § 60104(c).  And, where any safety standards are implicated here, they are done so "incidentally," and not as the "purpose or effect" of General Nessel's claims. *City of Grand Prairie*, 608 F.3d at 211, 212 ("this incidental salutary effect on fire safety does not undermine Congress's intent in promulgating the PSA").  Indeed, unlike safety standards, the PSA nowhere expresses an intent to preempt states' public trust powers and in no way forecloses Michigan's ability to exercise these powers over the placement of a pipeline beneath the Straits of Mackinac on sovereign lands.  In other words, Enbridge's interpretation is a far cry from "establish[ing] [a] congressional intent to extinguish . . . state claims by making the federal cause of action exclusive." *Baltimore*, 31 F.4th at 199.

## CONCLUSION

For the foregoing reasons, State Amici respectfully request that this Court reverse the district court's order denying remand.

20

Respectfully submitted,

Dated:     September 25, 2023     /s/ *Joseph T. Heegaard*
JOSEPH T. HEEGAARD
Special Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 900
St. Paul, MN 55101
651-583-6667
joseph.heegaard@ag.state.mn.us

Counsel for Amici Curiae

*And*

**FOR THE STATE OF CONNECTICUT**

WILLIAM TONG
Attorney General

/s/ *Kaelah M. Smith*
Kaelah M. Smith
Assistant Attorney General
Connecticut Attorney General's Office
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5250
kaelah.smith@ct.gov

**FOR THE STATE OF DELAWARE**

KATHLEEN JENNINGS
Attorney General

/s/ *Vanessa L. Kassab*
Christian Douglas Wright
Director of Impact Litigation
Vanessa L. Kassab
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
christian.wright@delaware.gov
vanessa.kassab@delaware.gov

**FOR THE STATE OF HAWAII**

ANNE E. LOPEZ
Attorney General

/s/ *Wade H. Hargrove III*
WADE H. HARGROVE III
Deputy Attorney General
Health Division
Department of the Attorney General
465 S. King Street, Room 200
Honolulu, Hawaii 96813
(808) 587-3050
Wade.H.Hargrove@hawaii.gov

**FOR THE STATE OF ILLINOIS**

KWAME RAOUL
Attorney General

/s/ *Jason E. James*
JASON E. JAMES
Assistant Attorney General
MATTHEW DUNN
Chief, Environmental Enforcement/
Asbestos Litigation Division
201 W. Pointe Drive, Suite 7
Belleville, IL 62226
(872) 276-3583
jason.james@ilag.gov

**FOR THE COMMONWEALTH
OF MASSACHUSETTS**

ANDREA JOY CAMPBELL
Attorney General

/s/ *Seth Schofield*
Seth Schofield
*Senior Appellate Counsel*
Energy and Environment Bureau
Massachusetts Attorney General's
Office
One Ashburton Place, 18th Flr.
Boston, MA 02108
Tel: (617) 963-2436
Email: seth.schofield@mass.gov

**FOR THE STATE OF
NEW JERSEY**

MATTHEW J. PLATKIN
Attorney General

/s/ *Lisa J. Morelli*
Lisa J. Morelli
Deputy Attorney General
New Jersey Division of Law
25 Market Street
Trenton, New Jersey 08625
Tel: (609) 376-2740
Email: Lisa.Morelli@law.njoag.gov

**FOR THE STATE OF
NEW MEXICO**

RAÚL TORREZ
Attorney General

/s/ *Aletheia V.P. Allen*
Aletheia V.P. Allen
Solicitor General
201 Third Street NW, Suite 300
Albuquerque, NM 87102
(505) 717-3500
aallen@nmag.gov

**FOR THE STATE OF NEW YORK**

LETITIA JAMES
Attorney General

/s/ *Ester Murdukhayeva*
Ester Murdukhayeva
Deputy Solicitor General
28 Liberty Street
New York, NY 10005
(212) 416-6279
ester.murdukhayeva@ag.ny.gov

**FOR THE STATE OF OREGON**

ELLEN F. ROSENBLUM
Attorney General

/s/ *Paul Garrahan*
Paul Garrahan
Attorney-in-Charge
Steve Novick
Special Assistant Attorney General
Natural Resources Section
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096
(503) 947-4540
Paul.Garrahan@doj.state.or.us
Steve.Novick@doj.state.or.us

**FOR THE COMMONWEALTH OF
PENNSYLVANIA**

MICHELLE A. HENRY
Attorney General

/s/ *Ann R. Johnston*
Ann R. Johnston
Assistant Chief Deputy Attorney
General
Civil Environmental Enforcement Unit
Office of Attorney General
Strawberry Square
14th Floor
Harrisburg, PA 17120
Email: ajohnston@attorneygeneral.gov
(717) 497-3678

**FOR THE STATE OF
RHODE ISLAND**

PETER F. NERONHA
Attorney General

/s/ *Randelle L. Boots*
Randelle L. Boots
Special Assistant Attorney General
Rhode Island Office of the Attorney
General
150 South Main Street
Providence, RI 02903
Ph: (401) 271-4400 ext. 2122
Email: rboots@riag.ri.gov

**FOR THE STATE OF
WASHINGTON**

ROBERT W. FERGUSON
Attorney General

/s/ *Julian H. Beattie*
Julian H. Beattie
Assistant Attorney General
2425 Bristol Court SW
Olympia, WA 98502
(360) 586-6749
Julian.Beattie@atg.wa.gov

**FOR THE DISTRICT OF COLUMBIA**

BRIAN L. SCHWALB
Attorney General

/s/ *Caroline S. Van Zile*
Caroline S. Van Zile
Solicitor General
Office of the Attorney General for
the District of Columbia
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
Tel: (202) 724-6609
Email: caroline.vanzile@dc.gov

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7) because the brief contains 4,818 words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2307 Build 16.0.16626.20198) 32-bit, in 14-point Times New Roman font.

Dated:    September 25, 2023          /s/ *Joseph T. Heegaard*
                                      JOSEPH T. HEEGAARD
                                      Special Assistant Attorney General
                                      Office of the Minnesota Attorney General
                                      445 Minnesota Street, Suite 900
                                      St. Paul, MN 55101
                                      651-583-6667
                                      joseph.heegaard@ag.state.mn.us

                                      Counsel for Amici Curiae

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system on September 25, 2023. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:      September 25, 2023          /s/ *Joseph T. Heegaard*
                                        JOSEPH T. HEEGAARD
                                        Special Assistant Attorney General
                                        Office of the Minnesota Attorney General
                                        445 Minnesota Street, Suite 900
                                        St. Paul, MN 55101
                                        651-583-6667
                                        joseph.heegaard@ag.state.mn.us

                                        Counsel for Amici Curiae