No. 23-1671

---

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

DANA NESSEL,
Attorney General of the State of Michigan,
on behalf of the people of the State of Michigan,

*Plaintiff-Appellant*,

v.

ENBRIDGE ENERGY, L.P.; ENBRIDGE ENERGY COMPANY, INC.;
ENBRIDGE ENERGY PARTNERS, L.P.,

*Defendants-Appellees.*

---

On Appeal from the U.S. District Court for the Western District of Michigan,
No. 1:21-cv-01057, Honorable Janet T. Neff

---

**BRIEF OF AMICI CURIAE TRIBAL NATIONS
IN SUPPORT OF PLAINTIFF-APPELLANT**

---

Christopher R. Clark
John Minode'e Petoskey
EARTHJUSTICE
311 South Wacker Drive, Suite 1400
Chicago, IL 60606
(312) 500-2200
cclark@earthjustice.org
jpetoskey@earthjustice.org

*Counsel for Amici Curiae Tribal Nations*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ................................................................................... 1

INTERESTS OF THE AMICI CURIAE ........................................................ 3

BACKGROUND ..................................................................................... 9

SUMMARY OF ARGUMENT ................................................................... 13

ARGUMENT ......................................................................................... 13

    I.    Nessel v. Enbridge Must Be Remanded to State Court Because
            Enbridge Missed the Mandatory Thirty-Day Removal Deadline
            in 28 U.S.C. § 1446(b)(1) and Does Not Meet the Requirements
            of Section 1446(b)(3). . ........................................................... 13

            A.    Enbridge missed the mandatory thirty-day removal deadline
                    in Section 1446(b)(1). .................................................... 14

            B.    Enbridge's removal does not satisfy the requirements of
                    Section 1446(b)(3) because Enbridge ascertained its right
                    to remove this suit in 2019 but did not remove until 2022. ........... 14

    II.    AG Nessel Is Exercising Her Responsibility and Right to Prosecute
            Claims *Under State Law* to Protect the Public Trust and Natural
            Resources on Which Tribal Amici Depend ............................... 18

CONCLUSION ...................................................................................... 21

CERTIFICATE OF COMPLIANCE ........................................................... 22

CERTIFICATE OF SERVICE ................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Collins v. Gerhardt*,
  211 N.W. 115 (Mich. 1926)...................................................................20

*Dahl v. R.J. Reynolds Tobacco Co.*,
  478 F.3d 965 (8th Cir. 2007) ...............................................................16

*Glass v. Goeckel*,
  703 N.W.2d 58 (Mich. 2005)................................................................20

*Green v. R.J. Reynolds Tobacco Co.*,
  274 F.3d 263 (5th Cir. 2001) ...............................................................16

*Holston v. Carolina Freight Carriers Corp.*,
  936 F.2d 573 (6th Cir. 1991) ...............................................................15

*Nessel ex rel. Michigan v. Amerigas Partners, L.P.*,
  954 F.3d 831 (6th Cir. 2020) ...............................................................14

*Michigan v. Enbridge Energy, LP*,
  571 F. Supp. 3d 851 (W.D. Mich. 2021) .......................................12, 15

*A.S. ex rel. Miller v. SmithKline Beecham Corp.*,
  769 F.3d 204 (3d Cir. 2014) ................................................................16

*People v. LeBlanc*,
  248 N.W.2d 199 (Mich. 1976)..............................................................19

*United States v. Michigan*,
  471 F. Supp. 192 (W.D. Mich. 1979), *aff'd as modified*, 653 F.2d
  277 (6th Cir. 1981), *cert. denied*, 454 U.S. 1124 (1981)................5, 6

*United States v. Winans*,
  198 U.S. 371 (1905)..............................................................................19

**Regulations**

Indian Entities Recognized by and Eligible to Receive Services
    From the United States Bureau of Indian Affairs,
    88 Fed. Reg. 54654 (Aug. 11, 2023) ................................................................3

**Statutes**

28 U.S.C. § 1446(b) ...............................................................................13, 15, 16

28 U.S.C. § 1446(b)(1)................................................................................13, 14

28 U.S.C. § 1446(b)(3).................................................................................*passim*

Michigan Environmental Protection Act,
    Mich. Comp. Laws § 324.1701 *et seq.* .........................................................1, 10

Ratified Indian Treaty 201: Ottawa and Chippewa, March 28, 1836,
    7 Stat. 491 ......................................................................................................5

U.S. Const. art. VI, cl.2 .........................................................................................19

**Other Authorities**

Chippewa Ottawa Res. Auth., *Resolution 01-28-16 A: Support for Removal or
    Decommissioning of Enbridge Line 5 in Mackinac Straits* (Jan. 28, 2016),
    https://d3n8a8pro7vhmx.cloudfront.net/oilandwaterdontmix/pages/723/
    attachments/original/1455643516/CORA-Line-5-Resolution.pdf ....................20

Chippewa-Ottawa Res. Auth., *Fishing Regulations*,
    https://www.1836cora.org/Fishing-Regulations.php.............................................6

Mich. Tech. Inst., *Independent Risk Analysis for the Straits Pipelines,
    Final Report* (Sept. 15, 2018),
    https://mipetroleumpipelines.org/sites/mipetroleumpipelines.org/files/
    document/pdf/Straits_Independent_Risk_Analysis_Final.pdf............................9

Nat'l Oceanic & Atmospheric Admin., *Great Lakes Fast Facts*,
    https://coast.noaa.gov/states/fast-facts/great-lakes.html.......................................9

Nat'l Transp. Safety Bd., *Enbridge Incorporated Hazardous Liquid Pipeline Rupture and Release* (adopted July 10, 2012), https://www.ntsb.gov/investigations/AccidentReports/Reports/PAR1201.pdf ...................................................................................................7

Nottawaseppi Huron Band of Potawatomi Tribal Gov't, *The Great Stain: 10 Years After the Kalamazoo River Oil Spill*, https://nhbp-nsn.gov/media/the-great-stain-10-years-after-the-kalamazoo-river-oil-spill/ ...........................................................................................8

U.S. Dep't of Just., *United States, Enbridge Reach $177 Million Settlement After 2010 Oil Spills in Michigan and Illinois* (July 20, 2016), https://www.justice.gov/opa/pr/united-states-enbridge-reach-177-million-settlement-after-2010-oil-spills-michigan-and/ .............................7, 8, 9

U.S. Fish & Wildlife Serv., et al., *Final Damage Assessment and Restoration Plan/Environmental Assessment for the July 25–26, 2010, Enbridge Line 6B Oil Discharges near Marshall, MI* (Oct. 2015), https://pub-data.diver.orr.noaa.gov/admin-record/6825/Final%20DARP%20and%20All%20Appendices.pdf .......................................................7

**INTRODUCTION**

This brief is submitted on behalf of sixty-three tribal nations in the Great Lakes region (collectively "Tribal Amici") in support of Plaintiff-Appellant Michigan Attorney General Dana Nessel. The Line 5 Dual Pipelines ("Dual Pipelines") pose an unacceptable risk of an oil spill into the Great Lakes. To address this risk, AG Nessel sued Defendants-Appellees Enbridge Energy Limited Partnership, Enbridge Energy Company, Inc., and Enbridge Energy Partners, L.P. (collectively, "Enbridge") in the Ingham County Circuit Court seeking an injunction against further operation of the Dual Pipelines in the Straits of Mackinac. The complaint included claims under the public trust doctrine, the Michigan Environmental Protection Act ("MEPA"), Mich. Comp. Laws § 324.1701 *et seq.*, and Michigan's common law of public nuisance. Enbridge removed this case to the United States District Court for the Western District of Michigan, where Hon. Janet T. Neff denied AG Nessel's motion to remand to state court. Tribal Amici respectfully request that this Court reverse that decision.

Tribal Amici include nations located throughout the Great Lakes region. The amici whose homelands are located within the borders of the State of Michigan include: Bay Mills Indian Community ("Bay Mills"), Grand Traverse Band of Ottawa and Chippewa Indians ("GTB"), Keweenaw Bay Indian Community ("KBIC"), Lac Vieux Desert Band of Lake Superior Chippewa Indians ("LVD"),

Little River Band of Ottawa Indians ("LRBOI"), Little Traverse Bay Bands of Odawa Indians ("LTBB"), Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians of Michigan ("Gun Lake Tribe"), Nottawaseppi Huron Band of the Potawatomi Tribe ("NHBP"), Saginaw Chippewa Indian Tribe ("Saginaw Chippewa Tribe"), and the Sault Ste. Marie Tribe of Chippewa Indians ("Sault Tribe").

The amici whose lands are located outside of the boundaries of the State of Michigan include the Anishinabek Nation of Ontario, Bad River Band of the Lake Superior Chippewa ("Bad River"), Fond du Lac Band of Lake Superior Chippewa ("Fond du Lac"), Grand Portage Band of Lake Superior Chippewa ("Grand Portage"), Ho-Chunk Nation, Lac du Flambeau Band of Lake Superior Chippewa Indians ("Lac Du Flambeau"), Leech Lake Band of Ojibwe ("Leech Lake"), Menominee Indian Tribe of Wisconsin ("Menominee"), Mille Lacs Band of Ojibwe ("Mille Lacs"), Minnesota Chippewa Tribe ("MCT"), Prairie Island Indian Community ("Prairie Island"), Red Cliff Band of Lake Superior Chippewa ("Red Cliff"), Red Lake Band of Chippewa Indians ("Red Lake"), St. Croix Chippewa Indians of Wisconsin ("St. Croix"), and the Stockbridge-Munsee Community Band of Mohican Indians ("Stockbridge-Munsee").

All Tribal Amici have an interest in the outcome of this appeal because they have cultural, economic, or treaty-based interests in protecting the Straits of

Mackinac from a catastrophic oil spill from the Dual Pipelines. A more detailed

explanation of their interests can be found in the following section.

This brief is filed pursuant to Federal Rule of Appellate Procedure 29. The

parties to this litigation have consented to the filing of this brief. No party's

counsel authored this brief in whole or in part; no party's counsel contributed

money to fund the brief; and no other person contributed money to fund the brief.

## INTERESTS OF THE AMICI CURIAE

Tribal Amici are federally recognized tribal nations and Canadian First

Nations located in the Great Lakes region. *See* Indian Entities Recognized by and

Eligible to Receive Services From the United States Bureau of Indian Affairs, 88

Fed. Reg. 54654 (Aug. 11, 2023). While each tribal nation retains its separate

political identity, all of them have shared interests in protecting cultural landscapes

from environmental harm. Most of the Tribal Amici are "Anishinaabe," a cultural

and linguistic group comprising the Ottawa (alternatively, "Odawa"), Chippewa

("Ojibwe"), and Pottawatomi ("Bodewademik") peoples. But Tribal Amici that

belong to other cultural groups—Ho-Chunk Nation, Menominee, Prairie Island,

and Stockbridge-Munsee—also join this brief because they too have interests in

ensuring that cultural landscapes revered by indigenous peoples are preserved from

destruction. These Tribes have historical ties to the Great Lakes and intertribal

connections and cultural exchange with the Anishinaabe communities that live near the Straits of Mackinac.

The Anishinaabe have inhabited what is today the State of Michigan and much of the Great Lakes region since time immemorial. The Anishinaabe way of life relies on the Great Lakes ecosystem and the Straits of Mackinac. In fact, the Straits of Mackinac are a central cultural site for all Anishinaabe people. The Anishinaabe creation story describes how the Great Turtle emerged from the Straits to save humanity and all the animals from a catastrophic flood. The Turtle transformed into the North American continent—what the Anishinaabe refer to as "Turtle Island"—after the humble muskrat placed on the Turtle's back a fistful of dirt that he retrieved from the Straits' bottomlands. The Anishinaabe maintain special ceremonies and traditions specifically associated with the Straits and a deep commitment to preserving this critically important cultural landscape for the next seven generations and beyond. It is for this reason that Anishinaabe tribal nations living farther away from the Straits of Mackinac—Bad River, Fond du Lac, Grand Portage, Lac Du Flambeau, LVD, Leech Lake, Mille Lacs, MCT, KBIC, Saginaw Chippewa Tribe, St. Croix, Red Cliff, and Red Lake—are also weighing in on this case.

In addition to these U.S.-based Anishinaabe tribes, the Anishinabek Nation of Ontario also joins this brief. The Anishinabek Nation is a Canadian intertribal

organization representing thirty-nine Anishinaabe First Nations throughout the province of Ontario—from Golden Lake in the east, Sarnia in the south, and Thunder Bay and Lake Nipigon in the north. These First Nations have an approximate combined population of 65,000 citizens, one third of the province of Ontario's First Nation population. The Anishinabek Nation's interests are affected by this case because many of their member First Nations' traditional territories are located near the Straits of Mackinac and would be harmed by a spill from the Dual Pipelines.

Five of the Tribal Amici—Bay Mills, GTB, LTBB, LRBOI, and Sault Tribe (collectively "the 1836 Tribes")—hold treaty rights that are exercised by their members in and around the Straits of Mackinac. *United States v. Michigan*, 471 F. Supp. 192 (W.D. Mich. 1979), *aff'd as modified*, 653 F.2d 277 (6th Cir. 1981), *cert. denied*, 454 U.S. 1124 (1981). In the Ratified Indian Treaty 201: Ottawa and Chippewa, March 28, 1836, 7 Stat. 491 ("1836 Treaty")—just one year prior to Michigan's statehood—several Anishinaabe tribes ceded vast acres of land and water to the United States. In that treaty, the United States guaranteed that the signatory tribal nations would retain the right to hunt, fish, gather, and continue living as Anishinaabe in the ceded territory. *See Michigan*, 471 F. Supp. at 225–40 (discussing treaty negotiations).

These tribal nations are the political successors in interest to the signatories of the 1836 Treaty and currently exercise regulatory jurisdiction over their members' commercial, subsistence, and cultural uses of treaty resources within the ceded territory. *Id*. at 248–9; *see, e.g.*, Chippewa-Ottawa Res. Auth., *Fishing Regulations*, https://www.1836cora.org/Fishing-Regulations.php (last visited Sept. 22, 2023). The Straits of Mackinac, where the Dual Pipelines are routed, lie within the heart of the boundaries of the territory ceded to the United States in the 1836 Treaty. *See Michigan*, 471 F. Supp. at 277.



For many centuries, members of the 1836 Tribes have sustainably harvested fish in northern Lakes Michigan, Huron, and the Straits, and have hunted, fished, and gathered medicines throughout Michigan lands for subsistence and commerce. Today, the waters of the Straits of Mackinac are among the most important and

productive in all of the ceded waters for Tribal fishers. Citizens of the 1836 Tribes continue to fish these waters for subsistence and income. Furthermore, fishing and fish are intertwined with their cultural and spiritual practices and the ways in which teachings are passed down through generations. The right to continue living as Anishinaabe in the ceded territory is vital to the 1836 Tribes.

NHBP and the Gun Lake Tribe have unique perspectives on the issues before the Court because of their previous experience with an Enbridge oil spill. *See* U.S. Fish & Wildlife Serv., Nottawaseppi Huron Band of the Potawatomi Tribe, Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians of Michigan, *Final Damage Assessment and Restoration Plan/Environmental Assessment for the July 25–26, 2010, Enbridge Line 6B Oil Discharges near Marshall, MI* (Oct. 2015), https://pub-data.diver.orr.noaa.gov/admin-record/6825/Final%20DARP%20 and%20All%20Appendices.pdf. The 2010 breach of Enbridge's Line 6B pipeline, installed in 1969, spilled approximately 840,000 gallons of crude oil near Marshall, Michigan, adjacent to NHBP and Gun Lake's land. *See* Nat'l Transp. Safety Bd., *Enbridge Incorporated Hazardous Liquid Pipeline Rupture and Release* (adopted July 10, 2012), https://www.ntsb.gov/investigations/AccidentReports/Reports/ PAR1201.pdf. The Line 6B spill destroyed Talmadge Creek, a thirty-five-mile span of the Kalamazoo River, and adjoining flood plains. *See* U.S. Dep't of Just., *United States, Enbridge Reach $177 Million Settlement After 2010 Oil Spills in*

*Michigan and Illinois* (July 20, 2016), https://www.justice.gov/opa/pr/united-states-enbridge-reach-177-million-settlement-after-2010-oil-spills-michigan-and. The cleanup of the Kalamazoo River spill cost one billion dollars over several years. *Id.*

In a publication remembering the ten-year anniversary of the oil spill disaster, NHBP stated:

> Although much of the spill area now may appear to [] have been restored, the plant and animal diversity has been reduced and there is an entire generation of turtles missing. Effects to the smallest organisms, the ecosystem as a whole and long-term human health may never be fully understood. Certainly, the spirit of the people residing within the watershed and beyond has been permanently stained.

Nottawaseppi Huron Band of Potawatomi Tribal Gov't, *The Great Stain: 10 Years After the Kalamazoo River Oil Spill*, https://nhbp-nsn.gov/media/the-great-stain-10-years-after-the-kalamazoo-river-oil-spill/ (last visited Sept. 25, 2023).

Tribal Amici fear that the consequences of a spill in the Straits of Mackinac could visit even worse destruction on the natural and cultural resources that are central to their ways of life. The 2010 Kalamazoo spill affected thirty-five miles of shoreline of a non-major inland watershed and resulted in the costliest inland oil spill in American history. By comparison, a study commissioned by the State of Michigan, performed under the leadership of Michigan Technological University ("Michigan Tech"), and contributed to by an array of respected experts, estimates that up to a thousand miles of Great Lakes shoreline are at risk of exposure to a

spill at the Straits, with devastating impacts to critical habitat, fish and wildlife, and myriad sensitive ecological relationships. *See generally* Mich. Tech. Inst., *Independent Risk Analysis for the Straits Pipelines, Final Report* (Sept. 15, 2018), https://mipetroleumpipelines.org/sites/mipetroleumpipelines.org/files/document/pd f/Straits_Independent_Risk_Analysis_Final.pdf.

The Michigan Tech analysis analogizes the potential impacts of a Straits oil spill to the Deepwater Horizon and Exxon Valdez spills. *See id.* at 154. These events are, of course, environmental catastrophes of historic infamy. But a Straits spill would pose an additional threat that those spills did not: while marine spills do not have the risk of contaminating drinking water supplies, more than thirty million people—ten percent of the U.S. population and thirty percent of the Canadian population—rely on the Great Lakes for drinking water. *Id*. at 29; *See also* Nat'l Oceanic & Atmospheric Admin., *Great Lakes Fast Facts*, https://coast.noaa.gov/states/fast-facts/great-lakes.html (last visited Sept. 25, 2023).

The Straits of Mackinac are a sacred wellspring of life and culture for tribal nations in Michigan and beyond. An oil spill into those waters would be culturally, economically, spiritually, and historically devastating for Tribal Amici.

## BACKGROUND

Attorney General Dana Nessel filed this litigation on June 27, 2019, in Ingham County Circuit Court seeking a declaratory ruling that the Dual Pipelines

9

violate the public trust doctrine and MEPA, and that they pose a common law public nuisance under state law. Ingham County Complaint, 21-cv-01057, R. 1-1, Page ID #19–49. The Attorney General states in her opening brief that Enbridge received the initial pleadings on July 12, 2019. Appellant Br. at 6. AG Nessel sought a permanent injunction against continued operation of the Dual Pipelines across the Straits of Mackinac from the Ingham County Circuit Court. Ingham County Complaint, 21-cv-01057, R. 1-1, Page ID #49. Prior to the case's removal to federal court on December 15, 2021, AG Nessel's motion for summary judgment and permanent injunctive relief were fully briefed before the Ingham County Circuit Court. In fact, the court held oral argument on that motion on May 22, 2020.

The Straits of Mackinac are a busy shipping channel, and the Dual Pipelines location poses the unique and acute risk of an unintentional anchor strike by a passing freighter. AG Nessel's complaint before the Ingham County Circuit Court details an anchor strike that occurred in 2018 before the suit was filed. *See* Ingham County Complaint, R. 1-1, Page ID #38. Then, on June 18, 2020, approximately a year after the AG's suit was filed, "the pipelines were impacted by a physical force powerful enough to dislodge a solid steel anchor support and damage the protective coating of the pipelines themselves." *See* Br. in Supp. of Pl.'s Mot. for Prelim. Inj. at 1, *Nessel v. Enbridge Energy*, No. 19-474-CE (Ingham Cnty. Cir. Ct.

10

Mich. June 22, 2020), https://www.michigan.gov/documents/ag/Motion_in_

Support_for_Preliminary_Injunction_with_Exhibits_2020-06-22_694561_7.pdf.

On motion of the Attorney General, the Ingham County Circuit Court issued an

emergency temporary restraining order on June 25, 2020, forcing Enbridge to stop

the flow of oil through the pipelines before they could cause serious damage to the

Straits. *See* TRO, *Nessel v. Enbridge Energy*, No. 19-474-CE (Ingham Cnty. Cir.

Ct. Mich. June 25, 2020), https://www.michigan.gov/-/media/Project/Websites/

AG/environment/pipelines/Order_Granting_Motion_for_TRO_in_Nessel_v_Enbri

dge_Energy_et_al_19474CE.pdf.

 In reaching its decision to grant the request for emergency relief, the Court

reasoned that "the severe risk of harm" from an oil spill was "so substantial and

irreparable, and endangers so many communities and livelihoods and the natural

resources of Michigan, the danger far exceeds the risk of financial loss to

Defendants . . . ." *Id.* at 5. Although the temporary restraining order ended on

September 24, 2020, these kinds of incidents will continue unless AG Nessel

obtains the relief she seeks.

 After the expiration of the emergency injunction, Governor Gretchen

Whitmer revoked Enbridge's 1953 bottomlands easement on November 13, 2020.

That same day, the Governor also filed suit in Ingham County Circuit Court to

enforce the easement's cancellation. Ingham County Complaint, 20-cv-1142, R. 1-

1, Page ID #19–37. Enbridge removed that case to federal court on January 5, 2021, and briefing on the state's motion to remand followed. *See Michigan v. Enbridge Energy, LP,* No. 20-cv-01142 (W.D. Mich. 2021). Four of the Tribal Amici—Bay Mills, GTB, LTBB, and NHBP—submitted an amicus brief supporting the Governor's motion. Meanwhile, on January 20, 2021, the Ingham County Circuit Court stayed the case at bar, *Nessel v. Enbridge*. The United States District Court for the Western District of Michigan, Hon. Janet T. Neff, denied the Governor's motion to remand *Michigan v. Enbridge* to state court on November 16, 2021. *Michigan v. Enbridge Energy, LP*, 571 F. Supp. 3d 851 (W.D. Mich. 2021). Subsequent to that order, on November 30, 2021, the Governor exercised her right to voluntarily dismiss *Michigan v. Enbridge*.

Following that dismissal, Enbridge removed this case, *Nessel v. Enbridge*, to federal district court on December 15, 2021. This was two years, four months, and three days after August 12, 2019, the statutory deadline for removal of AG Nessel's suit. AG Nessel moved to remand the case to state court, but the District Court denied her motion on August 18, 2022. The Attorney General then petitioned for interlocutory appeal of the District Court's order on March 2, 2023, which this Court granted on July 21, 2023.

AG Nessel and Tribal Amici now ask this Court to reverse the District Court's order and remand this case to Ingham County Circuit Court.

## SUMMARY OF ARGUMENT

Removal of *Nessel v. Enbridge* to federal court is not permitted under the federal removal statute because Enbridge missed the thirty-day deadline to remove in 28 U.S.C. § 1446(b).

Furthermore, even if Enbridge's removal had been timely, the District Court was required to grant the motion to remand the case to Ingham County Circuit Court because it lacked federal subject matter jurisdiction. AG Nessel's lawsuit is based entirely on Michigan's environmental statutes and common law.

AG Nessel's lawsuit asserts state law claims to protect the public trust from the risk of an oil spill, and the relief she seeks would also safeguard the rights and resources of federally recognized tribes. The lower court's order denying remand not only violates the clear text of the removal statute, it also frustrates the exercise of AG Nessel's state law prerogatives and the consequent benefits to Tribal Amici.

## ARGUMENT

**I.    Nessel v. Enbridge Must Be Remanded to State Court Because Enbridge Missed the Mandatory Thirty-Day Removal Deadline in 28 U.S.C. § 1446(b)(1) and Does Not Meet the Requirements of Section 1446(b)(3).**

The District Court erred in denying AG Nessel's motion to remand because Enbridge's removal does not satisfy the requirements of the federal removal statute, 28 U.S.C. § 1446.

**A.    Enbridge missed the mandatory thirty-day removal deadline in Section 1446(b)(1).**

In 28 U.S.C. § 1446(b)(1), Congress provides that "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading . . . ." The parties do not dispute that Enbridge received a copy of the complaint and a summons in this case on or before July 12, 2019. Therefore, under Section 1446(b)(1), the deadline to remove AG Nessel's case to federal court was on or before August 12, 2019. Nevertheless, Enbridge removed this case on December 15, 2021—*over 850 days* past the deadline. The District Court does not have the discretion to ignore the mandatory statutory deadline for removal and permit further litigation in federal court. By inventing an exception to the statutory mandate to address so-called "equitable considerations," the District Court eviscerated the clear text of Section 1446(b)(1) and unlawfully "snatch[ed] [this] case[,] which a State has brought from the courts of that State." *See Nessel ex rel. Michigan v. Amerigas Partners, L.P.*, 954 F.3d 831, 837–38 (6th Cir. 2020). The same admonishment applies here. This Court should reverse.

**B.    Enbridge's removal does not satisfy the requirements of Section 1446(b)(3) because Enbridge ascertained its right to remove this suit in 2019 but did not remove until 2022.**

Enbridge has also not met the statutory requirements of 28 U.S.C. § 1446(b)(3). Under this section, a defendant may remove a suit to federal court

"within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Thus, under Section 1446(b)(3), a defendant may remove a case after thirty days from service of the initial pleading, but only when the defendant lacked "solid and unambiguous" information that the case was removable. *Holston v. Carolina Freight Carriers Corp.*, 936 F.2d 573 (6th Cir. 1991) ("We hold that § 1446(b) starts the thirty-day period running from the date that a defendant has solid and unambiguous information that the case is removable, even if that information is solely within its own possession."). Here, Enbridge had solid and unambiguous information to support a claim for removal in 2019, but it waited until 2022 to remove.

Enbridge incorrectly argues that the moment from which it may first be ascertained that this case was removable was when it received a copy of the District Court's order in *Michigan v. Enbridge Energy, LP*, 571 F. Supp. 3d 851 (W.D. Mich. 2021). *See* Opp. to Mot. to Remand, 1:21-cv-1057, R. 20 at Page ID #577; Opinion, 1:21-cv-1057, R. 23 at Page ID #620. This argument is wrong because Enbridge conflates two distinct facts: (1) the point at which Enbridge ascertained that it had a right to seek removal of AG Nessel's suit, and (2) the point at which Enbridge was confident that removal might withstand AG Nessel's

inevitable motion to remand. Even if Enbridge did not know its likelihood of success in 2019, Enbridge had solid and unambiguous information that could have supported a claim for removal at that time. This includes information in the pleadings, such as the pertinent facts relating to the pipeline's impacts, history, and route, and the relevant claims under state law. It also includes information in the company's own possession, such as possible defenses, counterclaims, and the impacts of a shutdown. Despite this, the company did not remove this case until it was more certain that it could defeat a motion to remand before Judge Neff.

A ruling denying Michigan's motion to remand in a separate case does not allow Enbridge to retroactively remove AG Nessel's case to federal court. Ample precedent supports the conclusion that the term "order" in 28 U.S.C. § 1446(b)(3) does not refer to orders in other cases. *See, e.g.*, *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 210 (3d Cir. 2014) (holding that "the terms 'amended pleading, motion, order or other paper' only 'address[] developments within a case' and, therefore, court decisions in different cases do not count as an 'order'" within the meaning of 28 U.S.C. § 1446(b)(3)) (citing *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 969 (8th Cir. 2007);[1] *Green v. R.J. Reynolds*

---

[1] On this point, the *Dahl* court noted that "[i]f Congress had intended new developments in the law to trigger the recommencement of the thirty day time limit, it could have easily added language making it clear that § 1446(b) was not only addressing developments within a case." *Id*. at 969.

16

*Tobacco Co.*, 274 F.3d 263, 266–67 (5th Cir. 2001)). The exception in Section 1446(b)(3) is aimed at protecting a defendant's right to seek federal review when new facts, claims, or information arises in the plaintiff's case against them that establish a colorable basis for removal. Here, all information that arguably could support the removal of this case was known to Enbridge in 2019.

Nevertheless, Enbridge chose not to seek removal within thirty days of receiving a copy of AG Nessel's initial pleading. Instead, after the decision in *Michigan v. Enbridge*, Enbridge's calculus changed as it realized that its removal might withstand a motion to remand before Judge Neff. But an order in a separate case buttressing Enbridge's confidence that its arguments in support of removal would be successful before a specific judge is not an "order from which it *may first be ascertained*" that this case became potentially removable. *See* 28 U.S.C. § 1446(b)(3) (emphasis added). Judge Neff's order in a different case cannot be the basis for removal of *Nessel v. Enbridge*.

Section 1446(b)(3) does not support Enbridge's forum shopping. It does not allow a defendant, as Enbridge does here, to game the system by belatedly removing a case from state court after obtaining a favorable ruling on a motion to remand in a different case. Dispositive motions have been pending before Judge James S. Jamo of the Ingham County Circuit Court for over three years. Tribal Amici and the public have an interest in the prompt resolution of the critical

questions of state law presented in this case to the state court. If it were not for

Enbridge's procedural gamesmanship and the error by the District Court, this

dispute may well have been long settled. Further delay harms the interests of Tribal

Amici because this case has the potential to swiftly resolve the risk posed by the

Dual Pipelines.

Pulling the rug out from under the Ingham County Circuit Court several

years after this case was filed is contrary to the plain language of the removal

statute and does not serve the interests of comity, judicial efficiency, or the

protection of natural resources. For these reasons, this Court should reverse.

## II.    AG Nessel Is Exercising Her Responsibility and Right to Prosecute Claims *Under State Law* to Protect the Public Trust and Natural Resources on Which Tribal Amici Depend.

AG Nessel's prosecution of an action to protect the Straits of Mackinac and

the Great Lakes is a legitimate and appropriate exercise of authority under

Michigan law by the State's top law enforcement officer. The Tribal Amici agree

with AG Nessel that the District Court lacks subject matter jurisdiction to hear this

case, even if Enbridge's removal had been timely. The Attorney General's actions

are grounded solely in state law and constitute an exercise of her authority to

protect the public trust, and preserve clean water, fish, and habitat in the Straits.

Preservation of these resources is vital to upholding the treaty rights and the natural

environment on which Tribal Amici depend.

18

Indeed, AG Nessel's prosecution of state law claims is consistent with Michigan's obligation to honor and protect tribal treaty rights and resources. Treaties are the supreme law of the land, and the federal government has a unique trust responsibility to Indian tribes to uphold and protect their rights. *See* U.S. Const. art. VI, cl.2; *United States v. Winans*, 198 U.S. 371, 381–82 (1905). States also have a very important role to play in ensuring tribal treaty rights are respected. Indeed, the Michigan Supreme Court has long recognized the importance of ensuring that state law comports with the legal rights of tribal nations and their citizens under the 1836 Treaty. *See People v. LeBlanc*, 248 N.W.2d 199, 215 (Mich. 1976) (state law cannot be enforced against tribal members exercising their treaty rights) (citing *People v. Jondreau*, 185 N.W.2d 375 (Mich. 1971)).

The AG's action is a welcome departure from the manner in which the State has historically addressed tribal concerns with respect to Line 5. The 1836 Tribes were not consulted prior to the construction of the Dual Pipelines through Treaty-reserved waters—this is especially egregious when the very location of the Dual Pipelines is at the heart of tribal subsistence, commercial and cultural practices. And, as noted in AG Nessel's complaint, the State never made a finding that the Dual Pipelines complied with Michigan's public trust obligations. AG Nessel's lawsuit stands in marked contrast to this history.

For many years, Tribal Amici have been calling on the State to exercise its legal authority, including under the public trust doctrine, to protect the Straits of Mackinac and the Great Lakes from the perils posed by a potential oil spill from the Dual Pipelines. *See, e.g.*, Chippewa Ottawa Res. Auth., *Resolution 01-28-16 A: Support for Removal or Decommissioning of Enbridge Line 5 in Mackinac Straits* (Jan. 28, 2016), https://d3n8a8pro7vhmx.cloudfront.net/oilandwaterdontmix/pages/723/attachments/original/1455643516/CORA-Line-5-Resolution.pdf. The State's public trust obligation arises from the Michigan Constitution and state common law. The public trust is a "high, solemn, and perpetual trust, which it is the duty of the state to forever maintain." *Collins v. Gerhardt*, 211 N.W. 115, 118 (Mich. 1926). AG Nessel's actions to address the oil spill risk in the Straits of Mackinac by enjoining further operation of the Dual Pipelines under state law is central to fulfilling her duty as Michigan's top law enforcement officer "to preserve public rights in the Great Lakes and their natural resources." *Glass v. Goeckel*, 703 N.W.2d 58, 65 (Mich. 2005).

It is appropriate for Michigan courts, and not federal courts, to evaluate AG Nessel's purely state law claims relating to her public trust duties and powers. Tribal Amici emphasize that AG Nessel's actions under state law benefit all people who rely on the Great Lakes for their livelihood—this includes Michigan's public and tribal members exercising their treaty rights. While AG Nessel's action does

not necessarily fulfill the full scope of the state's obligation in relation to the 1836 Treaty and Line 5, this is an instance where the Michigan Attorney General is acting under state law to benefit the exercise of treaty rights. Wresting AG Nessel's case away from the state tribunal only stands to disincentivize actions under state law to conserve important Great Lakes resources that are relied upon by Tribal Amici and their members.

## CONCLUSION

For these reasons, Tribal Amici urge this Court to reverse the District Court's decision and remand this proceeding to the Ingham County Circuit Court for prompt resolution of AG Nessel's state law claims.

Dated: September 25, 2023               s/ Christopher R. Clark

Christopher R. Clark
John Minode'e Petoskey
EARTHJUSTICE
311 South Wacker Drive, Suite 1400
Chicago, IL 60606
(312) 500-2200
cclark@earthjustice.org
jpetoskey@earthjustice.org

*Attorney for Amici Curiae*
*Tribal Nations*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) and Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,651 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface in Microsoft Office 365 using 14-point Times New Roman.

Dated: September 25, 2023                    s/ Christopher R. Clark

                                             Christopher R. Clark
                                             EARTHJUSTICE
                                             311 South Wacker Drive, Suite 1400
                                             Chicago, IL 60606
                                             (312) 500-2200
                                             cclark@earthjustice.org

                                             *Attorney for Amici Curiae*
                                             *Tribal Nations*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 25, 2023, an electronic copy of this Brief of Amici Curiae Tribal Nations in Support of Plaintiff-Appellant was filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. The undersigned also certifies that participants who are registered CM/ECF users will be served via the CM/ECF system.

Dated: September 25, 2023             s/ Christopher R. Clark

                                     Christopher R. Clark
                                     EARTHJUSTICE
                                     311 South Wacker Drive, Suite 1400
                                     Chicago, IL 60606
                                     (312) 500-2200
                                     cclark@earthjustice.org

                                     *Attorney for Amici Curiae*
                                     *Tribal Nations*