No. 23-1671

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DANA NESSEL, Attorney General of the State of Michigan, on behalf of the People of the State of Michigan,

     Plaintiff-Appellant,

v.

ENBRIDGE ENERGY LIMITED PARTNERSHIP, ENBRIDGE ENERGY COMPANY, INC., and ENBRIDGE ENERGY PARTNERS, L.P.,

     Defendants-Appellees.

Appeal from the United States District Court
Western District of Michigan, Southern Division
Honorable Janet T. Neff

**PLAINTIFF-APPELLANT'S REPLY BRIEF**

Ann M. Sherman
Solicitor General
Counsel of Record

Daniel P. Bock
Keith D. Underkoffler
Assistant Attorneys General
Co-Counsel of Record
Attorneys for Plaintiff-Appellant
Environment, Natural Resources,
& Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
bockd@michigan.gov
underkofflerk@michigan.gov

Dated:  December 8, 2023

i

# TABLE OF CONTENTS

Page

Table of Authorities...................................................................................iv

Argument....................................................................................................1

I.     This case must be remanded because Enbridge's removal
       was untimely. ....................................................................................1

       A.     Enbridge's untimely removal is not saved by
              § 1446(b)(3). ...........................................................................1

              1.     According to Enbridge, the case stated by the
                     initial pleading was removable.......................................2

              2.     A district court order in another case cannot
                     restart the 30-day removal deadline. .............................6

              3.     The District Court's order denying remand in the
                     Governor's case is not an order from which
                     removability could first be ascertained. .......................8

       B.     The mandatory 30-day removal deadline in § 1446(b)(1)
              cannot be excused by "extraordinary circumstances." .........12

              1.     The case law does not establish a clear rule that
                     demands denial of remand...........................................13

              2.     The circumstances on which Enbridge relies are
                     not extraordinary, and were created by Enbridge. .....14

       C.     Enbridge waived its right to remove this case. ....................18

II.    This case must be remanded because there is no federal
       subject-matter jurisdiction...........................................................19

       A.     This case is not removable under the *Grable* doctrine.........20

              1.     No federal issue is necessarily raised in the
                     complaint and, to the extent any federal issue is

disputed, it is only because Enbridge raises it as a poorly disguised preemption defense...........................20

2. None of the federal issues raised by Enbridge is substantial, and exercising federal jurisdiction would disrupt the congressionally approved balance of judicial responsibilities..............................26

B. This case is not removable under federal common law........28

Conclusion and Relief Requested............................................32

Certificate of Compliance.....................................................33

Certificate of Service ...........................................................35

# TABLE OF AUTHORITIES

Page

## Cases

*A.S. ex rel. Miller v. SmithKline Beecham Corp.*,
769 F.3d 204 (3d Cir. 2014) ...............................................................2, 6

*ABB Paint Finishing, Inc. v. Nat'l Union Fire Ins. Co. of
Pittsburgh, PA*,
567 N.W2d 456 (Mich. Ct. App. 1997) .................................................18

*Arkansas v. Texas Gas Transmission Corp.*,
171 F. Supp. 413 (E.D. Ark. 1959) ................................................23, 24

*Barber v. State of Hawai'i*,
42 F.3d 1185 (9th Cir. 1994) ...............................................................23

*Berera v. Mesa Med. Grp.*,
779 F.3d 352 (6th Cir. 2015) .........................................................4, 8, 9

*Brown v. Demco, Inc.*,
792 F.2d 478 (5th Cir. 1986) ...............................................................14

*Camreta v. Greene*,
563 U.S. 692 (2011) ...............................................................................7

*Caterpillar Inc. v. Williams*,
482 U.S. 386 (1987) .............................................................................20

*City of Hoboken v. Chevron Corp.*,
45 F.4th 699 (3d Cir. 2022) .................................................................15

*Cogdell v. Wyeth*,
366 F.3d 1245 (11th Cir. 2004) ...........................................................19

*Columbia Gas Transmission, LLC v. Singh*,
707 F.3d 583 (6th Cir. 2013) ...............................................................28

*Cooper v. Tokyo Elec. Power Co.*,
860 F.3d 1193 (9th Cir. 2017) .............................................................29

*Dahl v. R.J. Reynolds Tobacco Co.*,
  478 F.3d 965 (8th Cir. 2007) ..................................................... 5, 7, 10

*Doe v. American Red Cross*,
  14 F.3d 196 (3d Cir. 1993) .................................................................. 7

*Douglas v. Seacoast Prods., Inc.*,
  431 U.S. 265 (1977) ............................................................................ 23

*Farm & City Ins. Co. v. Johnson*,
  190 F. Supp. 2d 1232 (D. Kan. 2002) .................................................. 13

*Forest Creek Townhomes, LLC v. Carroll Property Mgmt., LLC*,
  695 F. App'x 908 (6th Cir. 2017) .......................................................... 3

*Grable & Sons Metal Products, Inc. v. Darue Engineering &
  Manufacturing*,
  545 U.S. 308 (2005) ............................................................... 19, 20, 27

*Green v. R.J. Reynolds*,
  274 F.3d 263 (5th Cir. 2001) ................................................................ 7

*Hernandez v. Six Flags Magic Mountain, Inc.*,
  688 F. Supp. 560 (D.C. Cal. 1988) ...................................................... 13

*Holder v. City of Atlanta*,
  925 F. Supp. 783 (N.D. Ga. 1996) ....................................................... 14

*Holston v. Carolina Freight Carrier Corp.*,
  No. 90-1358, 1991 WL 112809 (6th Cir. June 26, 1991) ....................... 9

*Hornish v. King County*,
  899 F.3d 680 (9th Cir. 2018) ............................................................... 24

*Idaho v. Coeur d'Alene Tribe of Idaho*,
  521 U.S. 261 (1997) ............................................................... 15, 21, 22

*Illinois Cent. R. Co. v. State of Illinois*,
  146 U.S. 387 (1892) ............................................................................ 22

*In re Tobacco/Governmental Health Care Costs Litig.*,
  100 F. Supp. 2d 31 (D.D.C. 2000)........................................................ 30

*Loftin v. Rush,*
  767 F.2d 800 (11th Cir. 1985) .......................................................... 14

*Loftis v. United Parcel Servs., Inc.,*
  342 F.3d 509 (6th Cir. 2003) .......................................................... 20

*Mays v. City of Flint,*
  871 F.3d 437 (6th Cir. 2017) .......................................................... 12

*Mikulski v. Centerior Energy Corp.,*
  501 F.3d 555 (6th Cir. 2007) .......................................................... 26

*Nessel ex rel. Michigan v. Amerigas Partners, L.P.,*
  954 F.3d 831 (6th Cir. 2020) .......................................................... 13

*Nicodemus v. Union Pacific Corp.,*
  440 F.3d 1127 (10th Cir. 2006) ....................................................... 24

*North Carolina v. Alcoa Power Generating, Inc.,*
  853 F.3d 140 (4th Cir. 2017) .......................................................... 24

*Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.,*
  429 U.S. 363 (1977) ...................................................................... 23

*Parrish v. City of Albuquerque,*
  No. 1:20-cv-01055, 2021 WL 1923627 (D.N.M. May 13, 2021) ........... 25

*Patrickson v. Dole Food Co.,*
  251 F.3d 795 (9th Cir. 2001) ................................................. 30, 31, 32

*Powers v. Chesapeake & O. Ry. Co.,*
  169 U.S. 92 (1898) ......................................................................... 3

*PPL Montana, LLC v. Montana,*
  565 U.S. 576 (2012) ...................................................................... 22

*Premier Holidays Int'l, Inc. v. Actrade Capital, Inc.,*
  105 F. Supp. 2d 1336 (N.D. Ga. 2000) ............................................. 13

*Republic of Philippines v. Marcos,*
  806 F.2d 344 (2d Cir. 1986) ..................................................... 30, 31

*Robertson v. U.S. Bank, N.A.*,
  831 F.3d 757 (6th Cir. 2016) .............................................................. 18

*Rock Hemp Corp. v. Dunn*,
  51 F.4th 693 (7th Cir. 2022).............................................................. 19

*Teague v. Lane*,
  489 U.S. 288 (1989) .......................................................................... 6

*Telespectrum, Inc. v. Pub. Serv. Comm'n of Kentucky*,
  227 F.3d 414 (6th Cir. 2000) .............................................................. 5

*Torres v. S. Peru Copper Corp.*,
  113 F.3d 540 (5th Cir. 1997) ...................................................... 30, 31

*Ungaro-Benages v. Dresdner Bank AG*,
  379 F.3d 1227 (11th Cir. 2004) ........................................................ 29

*Wade v. Burns*,
  803 F. App'x 433 (2d Cir. 2020).......................................................... 9

*Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n*,
  668 F.2d 962 (7th Cir. 1982) ............................................................ 12

*Wisconsin v. Amgen, Inc.*,
  516 F.3d 530 (7th Cir. 2008) .............................................................. 6

*Yusefzadeh v. Nelson, Mullings, Riley, & Scarborough, LLC*,
  365 F.3d 1244 (11th Cir. 2004) ........................................................ 19

## Statutes

28 U.S.C. § 1446(a) ............................................................................ 5

28 U.S.C. § 1446(b) ............................................................................ 2

28 U.S.C. § 1446(b)(1)......................................................... 11, 12, 13, 14

28 U.S.C. § 1446(b)(3)................................................................. passim

28 U.S.C. § 1446(c)(3)(A) .................................................................... 3

43 U.S.C. § 1311(a) ...................................................................27

49 U.S.C. § 60104(c) .................................................................25

49 U.S.C. § 60104(e) ...........................................................25, 27

## Other Authorities

1977 Transit Pipelines Treaty, 1977 WL 181731, art. IV .....................27

1977 Transit Pipelines Treaty, 1977 WL 181731, art. IX .....................29

H.R. Rep. No. 81-352 (1949) ...............................................2, 3

William Shakespeare, Romeo and Juliet act 2, sc. 2 ...........................20

## Rules

Fed. R. Civ. P. 11 ....................................................................5

Mich. Ct. R. 2.116(C)(8) .........................................................18

# ARGUMENT

## I.    This case must be remanded because Enbridge's removal was untimely.

Enbridge removed this case 887 days after it was served with the complaint, 821 days after it filed its dispositive motion in the state court in which it raised the Federal Submerged Lands Act (FSLA) and the Pipeline Safety Act (PSA) as federal preemption defenses, and 386 days after it removed the nearly identical claims in the Governor's case.  (*See* Opening Br., Doc. 18, at 49–52.)  Nonetheless, Enbridge argues that its removal was timely on two grounds:  either (1) the District Court's order denying remand in the Governor's case restarted the 30-day removal period in this case under 28 U.S.C. § 1446(b)(3); or (2) the 30-day removal deadline was excused by "extraordinary circumstances." Neither argument works.

### A.    Enbridge's untimely removal is not saved by § 1446(b)(3).

Enbridge devotes most of its response brief to an argument that the District Court acknowledged but did not analyze in depth:  that its removal is timely under 28 U.S.C. § 1446(b)(3).  For the 30-day removal

exception in § 1446(b)(3) to apply, Enbridge must establish that "(1) 'the case stated by the initial pleading is not removable' and (2) [Enbridge] receive[d] 'an amended pleading, motion, order or other paper' (3) 'from which it may first be ascertained that the case is one which is or has become removable.'" *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 209–10 (3d Cir. 2014) (quoting 28 U.S.C. § 1446(b)). Enbridge has failed to establish any of these elements.

### 1. According to Enbridge, the case stated by the initial pleading was removable.

Section 1446(b)(3) only applies "if the case stated by the initial pleading is not removable." 28 U.S.C. § 1446(b)(3). This requirement reflects the Legislature's intent that "the right of removal may be exercised at a later stage of the case *if the initial pleading does not state a removable case but its removability is subsequently disclosed*." H.R. Rep. No. 81-352, at 14 (1949) (emphasis added).

The typical § 1446(b)(3) situation arises when a plaintiff attempts to evade federal jurisdiction by withholding information from its initial pleading or events after the initial pleading alter the nature of the case. As an example, in *Powers v. Chesapeake & O. Ry. Co.*, 169 U.S. 92, 98–

99 (1898), the plaintiff initially avoided federal diversity jurisdiction by naming non-diverse defendants, then voluntarily dismissed them after the removal period had passed, rendering the case "in its nature removable" for the first time. *See* H.R. Rep. No. 81-352, at 14 (1949) (discussing *Powers*). Similar circumstances arise when plaintiffs fail to provide information regarding the amount in controversy or the parties' citizenship in their initial pleadings. *See, e.g.*, *Forest Creek Townhomes, LLC v. Carroll Property Mgmt., LLC*, 695 F. App'x 908, 913 (6th Cir. 2017) (citizenship); 28 U.S.C. § 1446(c)(3)(A) (amount in controversy).

This case is nothing like that. Enbridge has not pointed to any event that transformed the nature of this case, or any information that was omitted from the Attorney General's complaint but later disclosed.[1] The complaint has not been amended and no other events have occurred that would affect its removability. Indeed, Enbridge even *admits* in its response brief that it believes the case stated by the initial pleading was removable. (Resp. Br., Doc. 35, at 23 ("Enbridge does not suggest that

---

[1] Enbridge does note that "the Government of Canada did not formally invoke the 1977 Transit Treaty until October 2021." (Resp. Br., Doc. 35, at 31.) But Enbridge does *not* argue that this triggered the 30-day removal window under § 1446(b)(3), for an obvious reason: Enbridge did not remove this case within that 30-day window.

this case was *not* removable before the district court's removal ruling in *Michigan v. Enbridge*.").)  That admission is fatal to Enbridge's argument:  if the case stated by the complaint was removable, § 1446(b)(3) does not apply.

Enbridge attempts to avoid this conclusion by arguing that, although it had "*colorable* arguments for federal jurisdiction" (*id.* at 15), the case was not "*unambiguously* removable before the district court upheld the removal in *Michigan v. Enbridge*" (*id.* at 20).  Enbridge uses the phrase "*unambiguously* removable" five times in its response brief (*id.* at 19, 20, 29) and even goes so far as to suggest that it is the "controlling legal standard" (*id.* at 23).

That is wrong.  The phrase "*unambiguously* removable" does not appear in the removal statute, or in any case cited by Enbridge.[2]  The statute says "if the case stated by the initial pleading is *not removable*." 28 U.S.C. § 1446(b)(3) (emphasis added).  So, the question is whether

---

[2] The phrase is Enbridge's gloss on the words "solid and unambiguous information" in *Berera v. Mesa Med. Grp.*, 779 F.3d 352 (6th Cir. 2015). As discussed below in § I.A.3, however, the question in *Berera* was whether *the information* provided to the defendant was clear, *not* whether *the legal issue* of federal jurisdiction was clear.  Enbridge conflates those issues throughout its response brief.

the complaint was "removable," not whether it was "*unambiguously*

removable." Enbridge's attempt to add the word "unambiguous" to the

statute should be rejected. *Telespectrum, Inc. v. Pub. Serv. Comm'n of

Kentucky*, 227 F.3d 414, 420 (6th Cir. 2000) ("This Court may not

amend or add to the plain language of a statute.").

For a case to be "removable," a defendant must be able file "a

notice of removal signed pursuant to Rule 11 of the Federal Rules of

Civil Procedure and containing a short and plain statement of the

grounds for removal." 28 U.S.C. § 1446(a). As the Eighth Circuit has

explained, this requires only that a defendant's grounds for removal be

"non-frivolous." *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 970

(8th Cir. 2007) ("Congress was aware that there could be disputed

issues of jurisdictional grounds for removal but it required in § 1446(a)

only that notices of removal comply with the Rule 11 standard and thus

be 'warranted by existing law or by a nonfrivolous argument for the

extension, modification, or reversal of existing law.'" (quoting Fed. R.

Civ. P. 11)). If Enbridge had "colorable grounds" for removal—as it

admits—then the case was by its reasoning removable and § 1446(b)(3)

does not apply.

5

It must be mentioned that, as set forth in § II below, remand is required because there is not, nor has there ever been, federal subject-matter jurisdiction over this case.  But, at this point, there is no need to even engage in that analysis because the case cannot be removed either way.  If Enbridge is correct, this case has been removable since its inception and the notice of removal was filed far too late; if the Attorney General is correct, this case has only ever belonged in state court. Either way, remand is required.

### 2.    A district court order in another case cannot restart the 30-day removal deadline.[3]

The second requirement in § 1446(b)(3) is that a defendant must receive "an amended pleading, motion, order or other paper."  28 U.S.C. § 1446(b)(3).  Most courts have construed this language to refer only "to pleadings, etc., filed in the suit sought to be removed, not in some other suit."  *Wisconsin v. Amgen, Inc.*, 516 F.3d 530, 533 (7th Cir. 2008) (collecting cases); *see also A.S. ex rel. Miller*, 769 F.3d at 210 ("In

---

[3] The Attorney General did not press this argument in her opening brief.  But it was raised in the proceedings below (R. 11, Page.ID ## 9, 18–19), and in the Tribal Nations' amicus brief on appeal (Amicus Br., Doc. 29, at 16–17).  This Court has discretion to consider it.  *See Teague v. Lane*, 489 U.S. 288, 300 (1989).

6

general . . . court decisions in different cases do not count as an 'order.'"); *Dahl*, 478 F.3d at 469 (same).

Enbridge cites two outlier cases in its notice of removal: *Green v. R.J. Reynolds*, 274 F.3d 263 (5th Cir. 2001), and *Doe v. American Red Cross*, 14 F.3d 196 (3d Cir. 1993). (R. 1, Page ID # 7.) But those courts were clear that they were recognizing only a "very narrow" exception, *Green*, 274 F.3d at 268, which applies only when an order "came from a court superior in the same judicial hierarchy," *Doe*, 14 F.3d at 202–03. No circuit has gone so far as to hold that a district court order in a different proceeding qualifies as an "order" under § 1446(b)(3)—which makes sense given that such decisions are not binding in other cases, *Camreta v. Greene*, 563 U.S. 692, 708 n.7 (2011), and therefore cannot affect their removability. Additionally, the Governor and the Department of Natural Resources (DNR) Director's voluntary dismissal of their case against Enbridge renders interlocutory orders in that case null and void. (*See* Opening Br., Doc. 18, at 31.) Extending § 1446(b)(3) to the District Court's order in the Governor's case, particularly after it has been annulled, would be an unsupported stretch.

**3. The District Court's order denying remand in the Governor's case is not an order from which removability could first be ascertained.**

The third requirement is that § 1446(b)(3) can only be triggered by a document "from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(3).  Enbridge attempts to satisfy this requirement by arguing that the root word of "ascertain" is "certain," and it was not "certain" that there was federal jurisdiction over this case until the District Court agreed with its arguments in *Michigan v. Enbridge*.  (Resp. Br., Doc. 35, at 19.)  There are numerous problems with this approach.

The first is that it fundamentally misconstrues the statutory language.  The only thing that a defendant needs to be able to "ascertain" under § 1446(b)(3) is that the case "is or has become removable"—*i.e.*, that it could file a notice of removal.  This Court has explained that the requirement is "akin to actual notice."  *Berera*, 779 F.3d at 364.  In other words, "[t]he statute triggers the thirty-day period from the receipt of notice of facts that lead to the possibility of removal."  *Holston v. Carolina Freight Carrier Corp.*, No. 90-1358, 1991

WL 112809, at *3 (6th Cir. June 26, 1991) (cited with approval in *Berera*).

The defendant in *Berera* did not have the requisite notice because the plaintiff's initial pleadings were "sparse and vague," and her counsel did not timely respond to requests "to clarify the factual basis of [her] claims." 779 F.3d at 364–65. This case is different. The Attorney General filed a detailed, 70-paragraph complaint that fully describes the factual and legal basis for her claims. (R. 1-1, Page ID ## 22–48.) Enbridge could have ascertained—and in fact *did* ascertain—that it could file a notice of removal by doing nothing more than reading the complaint and conducting legal research. *Cf. Wade v. Burns*, 803 F. App'x 433, 435 (2d Cir. 2020) (rejecting a defendant's attempt to invoke § 1446(b)(3) where the removal was based on federal preemption grounds that the defendant ascertained from the face of the complaint).

The second problem is that the record could not be clearer that Enbridge did not first ascertain its grounds for removal from the District Court's November 16, 2021 order in the Governor's case. Enbridge had already "ascertained" its arguments under the FSLA and the PSA in September 2019, when it asked the state court to dismiss

this case on the basis that those federal laws preempted the Attorney General's state-law claims.  (*See* Opening Br., Doc. 18, at 49–51.)  And it knew that it could repackage those arguments as grounds for removal no later than November 2020, when it used the FSLA, the PSA, and the 1977 Treaty as grounds to remove the nearly identical claims in the Governor's case.  (*See id.*)

Again, the Eighth Circuit's decision in *Dahl* is instructive.  In that case, the defendant knew about a potential ground for removal, and used it to remove a similar case, but did not raise it within the 30-day removal window.  478 F.3d at 966.  While the case was pending, the Eight Circuit issued an opinion endorsing that basis for removal, and the defendant filed a notice of removal, arguing that § 1446(b)(3) applied because it was not "certain" that removal was appropriate until the opinion was issued.  *Id.* at 968.  The Eighth Circuit rejected that argument, holding that the defendant's basis for removal "was ascertainable at the latest in January 2005 when [the defendant] used this ground to remove a similar case."  *Id.* 478 F.3d at 971.  This Court should reach the same conclusion.

The third problem with Enbridge's approach is that it would create an unworkable standard. When does a "removable" case become "*unambiguously* removable"? When is the relevant degree of "certainty" achieved? Enbridge argues that the threshold was met here by the District Court's order denying remand in the Governor's case, but it is hard to see how that could be since (1) that order is a district court ruling with no binding force; (2) it was issued in the Governor's case, which is distinguishable since it was timely removed; (3) the State of Michigan has always contended that the decision was incorrect; and (4) the order was vacated when the case was voluntarily dismissed. What Enbridge's standard would mean in future cases is anyone's guess.

A fourth and final problem with Enbridge's argument is that it seems to imply that the 30-day removal deadline in § 1446(b)(1) never applies in *Grable* cases. (*See* Resp. Br., Doc. 35, at 22 (arguing that this case was not unambiguously removable because the Attorney General pleaded only state-law claims and the *Grable* doctrine is "anything but clear" (citation omitted).) Adopting it would create a significant, unwritten exception to the statutory deadline. It would result in

11

uncertainty in state-court litigation.  *See Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n*, 668 F.2d 962, 965 (7th Cir. 1982) (explaining that the 30-day removal deadline ensures that plaintiffs are not forced to "start[] a case over in a second court after significant proceedings . . . have taken place in the first court").  And it would contravene the bedrock principle that "removal statutes are to be strictly construed, and all doubts should be resolved against removal." *Mays v. City of Flint*, 871 F.3d 437, 442 (6th Cir. 2017) (cleaned up).

### B.  The mandatory 30-day removal deadline in § 1446(b)(1) cannot be excused by "extraordinary circumstances."

Alternatively, Enbridge argues that the District Court had discretion to excuse the 30-day removal deadline in § 1446(b)(1) based on "extraordinary circumstances."  (Resp. Br., Doc. 35, at 24–28.) Enbridge never grapples with the plain language of the statute or the overwhelming weight of the authority that the 30-day removal deadline is mandatory and cannot be excused based on unwritten exceptions. (Opening Br., Doc. 18, at 19–41.)  Nor does Enbridge acknowledge that all doubts should be resolved against removal, or that cases brought by a state should not be removed unless "some clear rule demands it."

12

*Nessel ex rel. Michigan v. Amerigas Partners, L.P.*, 954 F.3d 831, 837–38 (6th Cir. 2020). Instead, Enbridge cites a handful of decades-old, out-of-circuit, and distinguishable cases that provide no basis for excusing the 30-day deadline in § 1446(b)(1)—especially, where, as here, the so-called "extraordinary circumstances" were created by Enbridge itself.

### 1.    The case law does not establish a clear rule that demands denial of remand.

Enbridge cites two cases in which every defendant except one filed a timely notice of removal, but one defendant filed one day late. *Hernandez v. Six Flags Magic Mountain, Inc.*, 688 F. Supp. 560 (D.C. Cal. 1988); *Farm & City Ins. Co. v. Johnson*, 190 F. Supp. 2d 1232 (D. Kan. 2002).

Another case cited by Enbridge involved a timely notice of removal and a dispute over whether consent from one of the parties was required. *Premier Holidays Int'l, Inc. v. Actrade Capital, Inc.*, 105 F. Supp. 2d 1336 (N.D. Ga. 2000).

Two more cases, from which Enbridge cherry-picks dicta out of context, actually support the Attorney General's position: both resulted in remand to state court due to untimely removal. *Brown v. Demco,*

13

*Inc.*, 792 F.2d 478 (5th Cir. 1986); *Holder v. City of Atlanta*, 925 F. Supp. 783 (N.D. Ga. 1996).

This leaves Enbridge with a single case in which the Eleventh Circuit held that the improper entry of a default judgment by a state court against the United States Navy, in derogation of federal government immunity, warranted excusing a late removal because to do otherwise would "trivialize our authority" under the statutes that provide for removal of cases against the federal government. *Loftin v. Rush*, 767 F.2d 800, 801 (11th Cir. 1985). This single, 38-year-old, distinguishable and out-of-circuit case hardly constitutes a "clear rule" that "demands" removal here—especially considering the overwhelming weight of the authority against it.

2.   **The circumstances on which Enbridge relies are not extraordinary, and were created by Enbridge.**

Even if the District Court had discretion to excuse the 30-day removal deadline in § 1446(b)(1)—and it did not—Enbridge also fails to identify any "extraordinary circumstance" that would warrant doing so here. (*See* Opening Br., Doc. 18, at 41–46.) Enbridge raises two arguments: (1) this case implicates "important federal interests"; and

14

(2) there is a similar case in federal court, which could lead to a forum battle. (Resp. Br., Doc. 35, at 26–27.) Neither argument is availing.

The first argument can be readily dispatched. "Our federal system trusts state courts to hear most cases—even big, important ones that raise federal defenses." *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 705 (3d Cir. 2022). Federal courts "do not for that reason conclude that state courts are a less than adequate forum for resolving federal questions. A doctrine based on the inherent inadequacy of state forums would run counter to basic principles of federalism." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 275 (1997).

Enbridge's second argument also fails. To the extent that any "race to judgment" or "collision course between the state and federal forum" exists, it was created by Enbridge. (Order Denying Mot. to Remand., R. 23, Page ID # 619.)

As this Court is aware, the Attorney General filed this case in state court in June of 2019, and has always maintained that that is where it belongs. Enbridge litigated the case in state court throughout 2019 and most of 2020, which included filing, briefing, and arguing cross-motions for summary disposition. (*See* Opening Br., Doc. 18, at 7.)

Indeed, the cross-motions for summary disposition were fully briefed and argued, and the parties awaited the state court's decision for more than four months before the Governor and DNR Director sued Enbridge. During those four months, the state court also granted the Attorney General's motion for a temporary restraining order (TRO), which Enbridge vigorously opposed, shutting down the pipelines for several weeks in June and July of 2020. (*See id.*)

In November of 2020, the Governor and DNR Director filed a similar case against Enbridge in state court. (Opening Br., Doc. 18, at 8–11.) It was only then that Enbridge precipitated a potential forum battle by (1) removing the Governor's case, but not this one, to federal court; and (2) filing a separate action against the Governor and the DNR Director in federal court. The Attorney General agreed in good faith to hold this matter in abeyance in state court, *not* so that the federal court could issue a ruling on "overlapping issues" as Enbridge vaguely claims (Resp. Br., Doc. 35, at 27), but rather so that the federal court could decide the Governor and DNR Director's remand motion. Obtaining that ruling from the District Court took approximately a year, at which point the Governor and DNR Director promptly

16

withdrew their case, removing any potential "forum battle" between that case and this one, and once again making this case ripe for decision in the state court.  (Opening Br., Doc. 18, at 8–11.)

That leaves only *Enbridge v. Whitmer*, which was filed by Enbridge and is unlikely to remain in federal court.  Enbridge notes that the parties in that case filed dispositive motions, and have awaited the District Court's decision since April of 2022.  (Resp. Br., Doc. 35, at 13.)  Enbridge does not mention that the Governor and DNR Director's motion is premised on Michigan's 11th Amendment immunity from suit in federal court.  (*See* 1:20-cv-01141, R. 63, Page ID ## 324–347.)  If the Governor and DNR Director prevail on their motion, that case will be dismissed and there will be no concern about the two separate cases proceeding in two separate courts.

To the extent that any forum battle exists, it is not because of any inequitable conduct by the Attorney General.  It is because Enbridge improperly sued other State actors (not the Attorney General) in federal court long after this case was filed in state court, and while the state court was considering a final decision on the merits in this case.  It is

troubling that the District Court blamed the Attorney General for Enbridge's gamesmanship.  This Court should not do the same.

## C.    Enbridge waived its right to remove this case.

"Because a motion for temporary injunction is necessarily resolved before a court reaches the merits of a case," a defendant does not "show any intent to litigate on the merits" in state court by opposing it. *Robertson v. U.S. Bank, N.A.*, 831 F.3d 757, 761 (6th Cir. 2016).  But Enbridge did more than defend the Attorney General's TRO motion in state court.  It filed, briefed, argued, and spent four months awaiting the state court's decision on a motion for summary disposition under Mich. Ct. R. 2.116(C)(8), a motion for a decision on the merits.  *ABB Paint Finishing, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 567 N.W2d 456, 459 (Mich. Ct. App. 1997) (explaining that "[a] motion for summary disposition brought pursuant to [Mich. Ct. R.] 2.116(C)(8) is properly granted or denied only on the merits").

Enbridge cites two distinguishable cases in which a court held that filing a dispositive motion in state court did not constitute constructive waiver.  In *Rock Hemp Corp. v. Dunn*, the case did not

18

become removable until after defendant filed its dipositive motion.
51 F.4th 693, 697 (7th Cir. 2022).

The other case, *Cogdell v. Wyeth*, 366 F.3d 1245 (11th Cir. 2004),
contains scant description of the facts or procedural history, but relies
on *Yusefzadeh v. Nelson, Mullings, Riley, & Scarborough, LLC*, 365
F.3d 1244 (11th Cir. 2004).  There, the defendant filed its first
responsive pleading (a dispositive motion) within 20 days of being
served as required by Florida law, then *timely filed* its notice of removal
within 30 days of being served.  *Id*. at 1246.  This is a far cry from
Enbridge's actions here.

## II.    This case must be remanded because there is no federal subject-matter jurisdiction.

Enbridge claims two bases for federal jurisdiction:  (1) the
"substantial federal question" doctrine set forth in *Grable & Sons Metal
Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308
(2005), also known as the *Grable* doctrine; and (2) the federal common
law of foreign affairs.  Given the untimeliness of Enbridge's removal,
there is no need to even consider these arguments.  But, in any event,
both arguments fail.

### A.    This case is not removable under the *Grable* doctrine.

This case is nothing like *Grable*.  It is not a quiet title action, nor is the complaint premised on any question of federal law (such as whether the IRS followed federal notice requirements).  Rather, the Attorney General challenges the validity of a real estate contract under state law.  The only federal issues in this case—the FSLA, the PSA, and the 1977 Transit Pipelines Treaty—are ordinary preemption defenses raised by Enbridge.  And *Grable* jurisdiction cannot arise based on preemption defenses.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Loftis v. United Parcel Servs., Inc.*, 342 F.3d 509, 515 (6th Cir. 2003).

### 1.    No federal issue is necessarily raised in the complaint and, to the extent any federal issue is disputed, it is only because Enbridge raises it as a poorly disguised preemption defense.

"What's in a name?  That which we call a rose by any other name would smell as sweet."  William Shakespeare, Romeo and Juliet act 2, sc. 2.  As Juliet observed, one cannot change the true nature of something by calling it something else.  Enbridge may give its preemption defenses a new name, but it cannot change their smell.

20

Enbridge's arguments—that the relief sought by the Attorney General is barred by the FSLA, the PSA, and the 1977 Treaty—are ordinary preemption defenses. In the state court, and in its case against the Governor and DNR Director in the District Court, Enbridge called these arguments what they are: federal preemption defenses. (Opening Br., Doc. 18, at 7–8; *see also* 1:20-cv-1141, R. 66, Page ID ## 376–381.) Indeed, in its brief here, Enbridge writes that the state court "did not rule on the merits of Enbridge's federal preemption arguments." (Resp. Br., Doc. 35, at 5–6.) And it refers to the PSA and the 1977 Treaty as containing "express prohibitions" on the relief sought in the complaint. (*Id.* at 47.)

Enbridge's attempts to repackage these preemption defenses as necessary elements of the Attorney General's complaint are unpersuasive. First, Enbridge claims that "[t]he Attorney General's claims hinge on her assertion that the State owns the bottomlands at the Straits of Mackinac." (Enbridge's Br., Doc. 35, at 35.) But there is no "actual dispute" about that. Michigan indisputably acquired title to Great Lakes bottomlands when it joined the Union in 1837. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 283 (1997). Enbridge

21

concedes as much in its response brief.  (*See* Resp. Br., Doc. 35, at 1 (stating that Line 5 "cross[es] the state-owned bottomlands in the Straits of Mackinac"); *id.* at 5 (stating that the State of Michigan "owns the Straits bottomlands").)

Next, in a remarkable affront to state sovereignty, Enbridge argues that a state cannot enforce the public-trust doctrine without necessarily raising issues of federal law.  (Enbridge's Br., Doc. 18, at 35.)  Not so.  The Supreme Court has long recognized that states have the authority to convey interests in Great Lakes bottomlands and that such conveyances are subject to the public-trust doctrine.  *Illinois Cent. R. Co. v. State of Illinois*, 146 U.S. 387, 435, 455–56 (1892).  It has further explained that "the public trust doctrine [is] a matter of state law" and that "[u]nder accepted principles of federalism, the States retain residual power to determine the scope of the public trust over waters within their borders."  *PPL Montana, LLC v. Montana*, 565 U.S. 576, 603–04 (2012); *see also Idaho*, 521 U.S. at 285 (explaining that *Illinois Central* was decided under state law).

There is no merit to Enbridge's argument that state-law, public-trust claims necessarily turn on the FSLA.  As the Supreme Court has

explained, the FSLA does not define or control the scope of state authority over bottomlands. *Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 372 n.4 (1977). Nor does the FSLA's reservation-of-rights clause limit state authority; it simply "gives fair warning of the possibility that the Government may, at some future time and in furtherance of these specified powers," pass legislation or regulations pertaining to submerged lands. *Douglas v. Seacoast Prods., Inc.*, 431 U.S. 265, 289 (1977) (Rehnquist, C.J., concurring). In other words, state and federal governments have "concurrent jurisdiction" regarding submerged bottomlands. *Barber v. State of Hawai'i*, 42 F.3d 1185, 1190–91 (9th Cir. 1994). The federal government may enact legislation or regulations that pertain to those lands (which has not happened here)—and when it does, the federal legislation or regulations may be raised as a federal preemption defense. *Id.* That is all the FSLA provides.

Against this, Enbridge, again, relies on out-of-circuit and distinguishable cases. (Resp. Br., Doc. 35, at 38–41.) *Arkansas v. Texas Gas Transmission Corp.*, 171 F. Supp. 413, 416 (E.D. Ark. 1959), was a *trespass case* in which a federal district court held that Arkansas'

23

assertion of sole title to half of the Mississippi River bed necessarily raised a disputed issue of federal law, as numerous federal statutes declared the Mississippi River to be a public highway.[4] *Nicodemus v. Union Pacific Corp.*, 440 F.3d 1127 (10th Cir. 2006) and *Hornish v. King County*, 899 F.3d 680 (9th Cir. 2018) turned on the scope of *federal* rights-of-way and easements. And the issue in *North Carolina v. Alcoa Power Generating, Inc.*, 853 F.3d 140 (4th Cir. 2017) was whether a body of water was navigable under federal law at the time North Carolina became a state (and thus whether the bottomlands passed to state ownership under the equal footing doctrine).[5] None of these cases come close to establishing that state-law, public-trust claims necessarily turn on federal law.

The 1977 Treaty does not help Enbridge either. Enbridge's assertion that the Treaty conflicts with the relief sought in the complaint is an ordinary conflict preemption defense. *See, e.g., Parrish*

---

[4] In describing this case, Enbridge states that the "court's reasoning has stood the test of time." (Resp. Br., Doc. 35, at 38.) A more accurate statement would be that the court's reasoning has never been tested. A Westlaw search of the citing history of *Texas Gas* reveals that it has never been cited by any other court in the 64 years since it was issued.

[5] Presumably Enbridge does not dispute that Lake Michigan and Lake Huron were navigable in 1837.

24

*v. City of Albuquerque*, No. 1:20-cv-01055, 2021 WL 1923627, at *3

(D.N.M. May 13, 2021) (rejecting complete preemption under the

Montreal Convention, noting that the Convention "operates only as an

affirmative defense," and remanding to state court).

The same is true of the PSA. Enbridge describes the PSA (as well

as the 1977 Treaty) as including an "express prohibition" against the

relief sought in the complaint. (Resp. Br., Doc. 35, at 47.) When a

defendant asserts that a federal law expressly prohibits the relief

sought by the plaintiff under state law, that is a preemption defense.

Indeed, the provision of the PSA on which Enbridge relies, 49 U.S.C.

§ 60104(c), *is titled* "*Preemption*," and provides, among other things,

that "[a] State authority may not adopt or continue in force safety

standards for interstate pipeline facilities." This is a preemption

defense if ever there was one.[6]

---

[6] That same section of the PSA expressly does *not* preempt, and leaves
to state regulation, the "routing and location" of interstate oil pipeline
facilities. 49 U.S.C. § 60104(e). Enbridge argues that routing or
location of Line 5 "were definitively settled in 1953, when Michigan
approved the routing of Line 5 and granted the easement allowing Line
5 to be built across the Straits." (Resp. Br., Doc. 35, at 44.) But this
case *challenges the validity of that conveyance*.

Try as it might, Enbridge cannot recast its arguments as something they are not.  A rose by any other name is still a rose, and a preemption defense by any other name still does not get Enbridge into federal court.

>   **2.  None of the federal issues raised by Enbridge is substantial, and exercising federal jurisdiction would disrupt the congressionally approved balance of judicial responsibilities.**

Once a defendant identifies a federal issue that is both necessarily raised and actually disputed (neither of which is the case here), it must show that the federal issue is substantial and can be decided without disrupting the congressionally approved division of state and federal responsibilities.  *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007).  Enbridge has not made either showing.

The federal issues raised by Enbridge are not "substantial" under the four-prong *Mikulski* test because this case does not involve any federal agency, nor any agency's compliance with a federal statute, and because the FSLA, PSA, and 1977 Treaty do not apply to this case at all.

26

Further, snatching this case from state court would disrupt the congressionally approved balance of state and federal responsibilities. The FSLA expressly acknowledges that states have "the right and power to manage, administer, lease, develop, and use the said lands and natural resources all in accordance with applicable State law." 43 U.S.C. § 1311(a). The PSA similarly leaves authority over the "routing and location" of interstate oil pipelines to the states. 49 U.S.C. § 60104(e). And the 1977 Treaty preserves the rights of public authorities to adopt nondiscriminatory "regulations, requirements, terms, and conditions" with respect to such matters as "environmental protection."[7] 1977 WL 181731, art. IV (emphasis added).

Even if Enbridge's arguments were not thinly veiled attempts to pass off preemption defenses as federal issues necessarily raised by the complaint, there would still not be federal jurisdiction under the third and fourth factors of *Grable*.

---

[7] Fatal to Enbridge's argument that Article II of the Treaty prohibits this action, Article IV applies "[*n*]*otwithstanding the provisions of Article II*." 1977 WL 181731, art. IV.

**B.    This case is not removable under federal common law.**

Contrary to Enbridge's assertion, the fact that the Canadian

government is interested in this case is not a basis for federal subject-

matter jurisdiction.  Enbridge seeks to hang its hat on the vague notion

that "a federal rule of decision is 'necessary to protect uniquely federal

interests'" in this case.  (Resp. Br., Doc. 35, at 51.)  But there is no

uniquely federal interest here.  This is a dispute about the validity of an

easement between a landowner and an easement holder, no different

than the dispute in *Columbia Gas Transmission, LLC v. Singh*,

707 F.3d 583 (6th Cir. 2013).

Congress had the opportunity to declare the location and routing

of interstate oil pipelines a federal issue when it passed the PSA, but it

did the opposite.  Nor did Congress seek to impose limits on states' title

to submerged lands when it passed the FSLA.

In the 1977 Treaty, the United States and Canada could have

sought to abrogate the rights of public authorities to enforce

nondiscriminatory regulations, terms, rules, or conditions (such as the

state laws that form the basis of the complaint, as well as the 1953

Easement Agreement itself) but they expressly preserved such actions.

Additionally, the United States and Canada could have sought to bar lawsuits such as this, or prescribed a federal forum for such lawsuits, but they did not.[8]  And the Executive Branch has had years to weigh in here, either via an amicus brief or a statement of interest, but it has not done so.

In spite of this overwhelming silence, Enbridge anoints itself the champion of the federal government and claims that this lawsuit runs afoul of the rarely used and controversial foreign affairs doctrine. Enbridge cites no binding case law from this Circuit or the Supreme Court that allows courts to create jurisdiction for themselves, beyond what Congress provides, when they feel that a case is important to the federal government, because no such case law exists.  Rather, Enbridge relies on two out-of-circuit decisions:  *Torres v. S. Peru Copper Corp.*,

---

[8] It is not uncommon for treaties to contain such provisions.  *See, e.g.*, *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1234 (11th Cir. 2004) (discussing an agreement between the United States and Germany that created "the exclusive remedy and forum" for certain claims); *Cooper v. Tokyo Elec. Power Co.*, 860 F.3d 1193, 1200 (9th Cir. 2017) (discussing international conventions stating that "jurisdiction . . . shall lie only" with certain courts).  The dispute resolution provision contained in Article IX of the 1977 Treaty says nothing about court practice and applies only to "parties" to the Treaty, meaning the United States and Canada.  It does not govern the conduct of non-parties at all.

113 F.3d 540 (5th Cir. 1997) and *Republic of Philippines v. Marcos*, 806 F.2d 344 (2d Cir. 1986).

*Marcos* is distinguishable in that it did not involve removal jurisdiction at all.  It was filed in federal court in the first instance, it concerned the acts of a foreign government, and indeed a foreign government was the plaintiff.  *Marcos*, 806 F.2d at 346.

*Torres* is the only case Enbridge can point to in which a circuit court blessed removal based on the foreign affairs doctrine.  But that ruling was predicated on the fact that the lawsuit struck directly at "Peru's sovereign interests by seeking damages for activities and policies in which the government actively has been engaged." *Torres*, 113 F.3d at 543.  Here, while Canada has expressed an interest in the merits of this dispute, the Canadian government itself is not involved in operating oil pipelines on Michigan's submerged bottomlands, nor is Enbridge's operation of Line 5 a matter of Canadian sovereignty.

Moreover, other courts have criticized and declined to follow the reasoning of *Torres* and *Marcos*.  *See Patrickson v. Dole Food Co.*, 251 F.3d 795, 803 (9th Cir. 2001); *In re Tobacco/Governmental Health Care Costs Litig.*, 100 F. Supp. 2d 31, 36–38 (D.D.C. 2000).

In *Patrickson*, the defendant argued that the state law claims, "implicate[d] the 'uniquely federal' interest in foreign relations, and so must be heard in a federal forum." *Id*. at 800–01. The Ninth Circuit noted that the effect of this argument was to interpret the foreign affairs doctrine as creating an exception to the well-pleaded complaint rule. *Id*. at 801. The Ninth Circuit declined to do so, holding that:

> State courts apply federal law in a wide variety of cases and, by doing so, they necessarily develop it. This does not undermine the nationwide uniformity of federal law much more than having somewhat different applications of federal law in the various federal circuits . . . .

> We see no reason to treat the federal common law of foreign relations any differently than other areas of federal law . . . . Congress has provided federal jurisdiction in certain cases implicating our foreign relations, regardless of the nature of the claim . . . . What Congress has not done is to extend federal-question jurisdiction to all suits where the common law of foreign relations might arise as an issue. We interpret congressional silence outside these specific grants of jurisdiction as an endorsement of the well-pleaded complaint rule.

*Id*. at 802–03.

There is no issue of "uniquely federal interest" in this case, therefore the foreign affairs doctrine is irrelevant. But, even if this Court was to find that this case raises an issue of uniquely federal interest, it should "decline to follow" *Marcos* and *Torres* "insofar as they

31

stand for the proposition that federal courts may assert jurisdiction over a case simply because a foreign government has expressed a special interest in its outcome." *Id*. at 803.

## CONCLUSION AND RELIEF REQUESTED

For the reasons set forth above, the Attorney General respectfully requests that this Court reverse the District Court's Order denying remand, and send this case back to state court where it belongs.

Respectfully submitted,

Ann M. Sherman
Solicitor General
Counsel of Record

*/s/ Daniel P. Bock*
Daniel P. Bock
Keith D. Underkoffler
Assistant Attorneys General
Co-Counsel of Record
Attorneys for
Plaintiff-Appellant
Environment, Natural
Resources, and Agriculture
Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
bockd@michigan.gov
underkofflerk@michigan.gov

Dated:  December 8, 2023

32

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.      This reply brief complies with the type-volume limitation of
Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because, excluding
the parts of the document exempted by Federal Rule of Appellate
Procedure 32(f), this reply brief contains no more than 6,500 words.
This document contains 6,498 words.

2.      This document complies with the typeface requirements of
Federal Rule of Appellate Procedure 32(a)(5) and the type-style
requirements of Federal Rule of Appellate Procedure 32(a)(6) because
this document has been prepared in a proportionally spaced typeface
using Word 2013 in 14-point Century Schoolbook.

Respectfully submitted,

Ann M. Sherman
Solicitor General
Counsel of Record

/s/ *Daniel P. Bock*
Daniel P. Bock
Keith D. Underkoffler
Assistant Attorneys General
Co-Counsel of Record
Attorneys for
Plaintiff-Appellant

33

Environment, Natural
Resources, and Agriculture
Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
bockd@michigan.gov
underkofflerk@michigan.gov

# CERTIFICATE OF SERVICE

I certify that on December 8, 2023, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record (designated below).

Respectfully submitted,

Ann M. Sherman
Solicitor General
Counsel of Record

/s/ *Daniel P. Bock*
Daniel P. Bock
Keith D. Underkoffler
Assistant Attorneys General
Co-Counsel of Record
Attorneys for
Plaintiff-Appellant
Environment, Natural
Resources, and Agriculture
Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
bockd@michigan.gov
underkofflerk@michigan.gov

LF:  Enbridge Straits (AG v) (CA6 #3) (AG Actions)/AG #2019-0253664-F/Reply Brief 2023-12-08