# No. 23-1671

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

─────────────

DANA NESSEL, Attorney General of the State of Michigan, on behalf of the People of the State of Michigan,

*Plaintiff-Appellant,*

v.

ENBRIDGE ENERGY, LIMITED PARTNERSHIP; ENBRIDGE ENERGY COMPANY, INC.; AND ENBRIDGE ENERGY PARTNERS, L.P.,

*Defendants-Appellees.*

─────────────

On Permissive Interlocutory Appeal from the U.S. District Court
for the Western District of Michigan | No. 1:21-cv-01057-RJJ-RSK

─────────────

## PETITION FOR REHEARING *EN BANC*

─────────────

Phillip J. DeRosier
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3866
pderosier@dickinsonwright.com

Peter H. Ellsworth
Jeffery V. Stuckey
DICKINSON WRIGHT PLLC
123 W. Allegan Street, Suite 900
Lansing, MI 48933
(517) 371-1730
pellsworth@dickinsonwright.com
jstuckey@dickinsonwright.com

Alice E. Loughran
Mark C. Savignac
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-6202
aloughran@steptoe.com
msavignac@steptoe.com

John J. Bursch
BURSCH LAW PLLC
9339 Cherry Valley Avenue SE, #78
Caledonia, MI 49316
(616) 450-4235
jbursch@burschlaw.com

*Counsel for Defendants-Appellees*

TABLE OF CONTENTS

Rule 35(b) Statement ............................................................................1

Statement of the Case..........................................................................3

Reasons for Granting Rehearing *En Banc* ................................................7

I.    The *en banc* Court should resolve the conflict that the panel opinion
      creates with this Court's *Berera* decision.......................................7

II.   The *en banc* Court should resolve the conflict that the panel opinion
      creates with other Courts of Appeal. ...........................................15

Conclusion .......................................................................................18

Certificate of Compliance

Certificate of Service

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berera v. Mesa Medical Group*,
779 F.3d 352 (6th Cir. 2015) .........................................................*passim*

*Gillis v. Louisiana*,
294 F.3d 755 (5th Cir. 2002) ...............................................................17

*Holder v. City of Atlanta*,
925 F. Supp. 783 (N.D. Ga. 1996)........................................................17

*Loftin v. Rush*,
767 F.2d 800 (11th Cir. 1985) ......................................................16, 17

*Martin v. Franklin Capital Corp.*,
546 U.S. 132 (2005)...............................................................................12

*Premier Holiday Int'l, Inc. v. Actrade Capital, Inc.*,
105 F. Supp. 2d 1336 (N.D. Ga. 2000)...............................................17

**Statutes**

28 U.S.C. § 1446(b) ............................................................9, 12, 13, 16

28 U.S.C. § 1446(b)(3).......................................................................*passim*

28 U.S.C. § 1447(c) ...............................................................................12

Federal Insurance Contributions Act (FICA) ................................9, 10, 13

**Other Authorities**

14C Wright & Miller, *Federal Practice and Procedure* § 3731 (4th
ed.)..........................................................................................................8, 17

Black's Law Dictionary (4th ed. 1951) ................................................14

Fed. R. App. P. 35 .................................................................................15

Fed. R. App. P. 35(b)(1)(A) ....................................................................7

Fed. R. Civ. P.11 ...............................................................................12, 15

Sixth Cir. R. 32.1(b)................................................................................7

Webster's II New College Dictionary (1995)..........................................14

## RULE 35(b) STATEMENT

This case arises from efforts by Michigan state officials to permanently shut down an international pipeline that provides energy to millions in the Midwest and central Canada. This pipeline—known as Line 5—has served this vital function for almost seventy years.

Michigan's Attorney General sought to litigate this international controversy in state court. When defendants removed the action to federal court, the Attorney General argued the removal was untimely under 28 U.S.C. § 1446(b). The district court rejected that argument, but a panel of this Court reversed in a published decision. *En banc* review is appropriate.

*First*, the panel's decision creates an intra-circuit conflict on when the statutory removal clock starts to run. Fed. R. App. P. 35(b)(1)(A). In *Berera v. Mesa Medical Group, PLLC*, 779 F.3d 352 (6th Cir. 2015), the Court held that "[t]he 30-day period in § 1446(b)(1) starts to run *only if* the initial pleading contains *solid and unambiguous information* that the case *is removable*." *Id.* at 364 (emphasis added). In this case, however, the panel held that the 30-day removal period runs when "the defendant has *a good-faith basis to argue* that at least one of the plaintiff's claims depends on the application of federal law." (Slip op. 8; emphasis added). Defendants are thus left with inconsistent standards on when the removal clock starts to run.

1

*Second*, the panel's decision creates a conflict with "authoritative decisions" from the U.S. Court of Appeals for the Eleventh and Fifth Circuits. Fed. R. App. P. 35(b)(1)(B). The panel ruled that the 30-day window for removal is mandatory and leaves no room for equitable exceptions. (Slip op. 17.) Yet, the Eleventh and Fifth Circuits have reached the opposite conclusion. *Loftin v. Rush*, 767 F.2d 800, 805 (11th Cir. 1985); *Gillis v. Louisiana*, 294 F.3d 755 (5th Cir. 2002).

*Finally*, this case is the paradigm for why an equitable exception should exist. *See* Fed. R. App. P. 35(b)(1)(B) (questions of exceptional importance). As the district court found, "it would be an absurd result … to remand the present case and sanction a forum battle" between the federal and state courts. (Op., R.23, PageID#620.) More recently, the Government of Canada declared that Michigan's efforts to shut down Line 5 violate express promises the United States made to Canada in a 1977 Treaty, and Canada invoked the Treaty's dispute resolution provision. (Slip op. 12.) Only two months before the panel's decision here, the U.S. Government expressed a "strong interest" in preventing any action with respect to Line 5 that would "expos[e] the United States to … substantial monetary damages" and affect "trade and diplomatic relations with Canada." (CA6 ECF No. 50, U.S. *Amicus* Br. 2-3.) Remanding the action to state court threatens the substantial U.S. interest in a uniform body of law affecting foreign relations and undermines the confidence that foreign nations place in their agreements with the United States.

2

**STATEMENT OF THE CASE**

**1.** Line 5 has been serving the energy markets in the Midwest and Canada for 70 years. (Slip op. 1.) Any Line 5 shutdown would have a "devastating impact" on Canada's economy and energy security. (Canada *Amicus* Br., No. 1:20-1142, R.45, PageID##553-54.) It would also have "severe negative consequences in multiple" Midwest states. (Chambers of Commerce *Amicus* Br. 1, 7). Line 5 supplies virtually all propane used in Ontario and most of Michigan. (*Id.* at 3, 7-8.) It supplies a large part of central Canada's crude oil needs. (*Id.* at 7-8.) It serves ten oil refineries in the United States and Canada and provides jobs and benefits for thousands of workers in both nations. (Slip op. 1; Unions' *Amicus* Br. 3-12.)

Line 5 extends over 645 miles, traversing Wisconsin and Michigan before crossing into Ontario, Canada. (Slip op. 1.) As reflected in the map below, a four-mile segment of Line 5 crosses the Straits of Mackinac under an Easement granted to Enbridge's predecessor in 1953:



CBC NEWS

Line 5's continued operations are protected by a 1977 Treaty between the United States and Canada.  (Slip op. 4-5.)  This Treaty was ratified by President Carter with the advice and consent of the Senate.  123 Cong. Rec. 26,291 (1977).  It thus "stands on the same footing of supremacy" as the U.S. Constitution and federal laws.  *Asakura v. City of Seattle*, 265 U.S. 332, 341 (1924).

    **2.**    In June 2019, the Michigan Attorney General filed this action (*Nessel v. Enbridge*) in state court.  (Slip op. 3.)  The Attorney General asserted violations of three state laws:  the public trust doctrine, common-law public nuisance, and the Michigan Environmental Protection Act.  (*Id.*)  Enbridge has not filed an answer; no discovery has taken place.  (*Id.*)  Instead, the parties filed cross motions for summary disposition.  The state court has not acted on the cross motions.  (Slip op. 3.)

**3.**    In November 2020, the Governor of Michigan filed a second lawsuit (*Michigan v. Enbridge*) in state court.  (Slip op. 4.)  The Governor set a deadline of May 2021 for shutting down Line 5.  (*Id.*)  Enbridge removed the Governor's case to federal court, and the Governor sought a remand to state court.

The Government of Canada filed an *amicus* brief, explaining the significant foreign affairs issues at stake. (Slip op. 4-5.)  While the Governor's motion for remand was pending, Canada formally invoked the dispute resolution provisions of the 1977 Treaty with the United States.  (Slip op. 5.)  Canada took these actions in direct response to Michigan's efforts to shut down Line 5.

A few weeks later, the district court (Neff, J.) denied the Governor's remand motion.  (Slip op. 5.)  The district court held that "this case is properly in federal court" pursuant to the embedded-federal-question doctrine articulated in *Grable & Sons Metal Products v. Darue Engineering*, 545 U.S. 308, 321 (2005).  (Slip op. 5.)

The Governor voluntarily dismissed her lawsuit in direct response to the court's order, explaining:  "the federal court has now decided to keep the lawsuit … [but] I believe the people of Michigan, and our state courts, should have the final say." (Press Release, No. 1:20-cv-01141, R.39-1:1, PageID#254.)  "[B]y voluntarily dismissing the governor's action against Enbridge in federal court," according to the Governor, the state officials "clear[ed] the way for … Attorney General Dana Nessel's lawsuit to go forward … expeditiously in state court." *Id.*

**4.**      Enbridge removed the Attorney General's action.  (Slip op. 5.)  Under

28 U.S.C. § 1446(b), a case may be removed to federal court within thirty days of

receipt of "an order" from which it can be first "ascertained" that the case "is or has

become" removable.  There is no dispute Enbridge removed within thirty days of

receiving the federal-court order in *Michigan v. Enbridge*.  But the Attorney General

argued that the action should have been removed within thirty days of her original

complaint.  The controversy attracted numerous *amici*, both at the district court and

on appeal.  (CA6 ECF Nos. 21, 23-30, 39-43.)

The district court denied the Attorney General's motion to remand.  (Slip op.

5.)  The removal here was "timely and proper" because the order denying remand in

the Governor's action "established for the first time that [federal district court] is an

appropriate forum for deciding the substantial federal issues at stake" and presented

"a watershed event for removal purposes …."  (*Id*.; Op., R.23, PageID#620.)  The

court also ruled that exceptional circumstances warranted retaining the case.  (Slip

op. 5.)

**5.**      A panel of this Court reversed, concluding that Enbridge's removal was

untimely under § 1446(b), and there was no exceptional-circumstances exception to

the statutory deadline.

**6.**      In Enbridge's separate action for declaratory judgment, the district

court (Jonker, J.) recently denied Michigan state officials' motion to dismiss and

6

scheduled Enbridge's motions for summary judgment for July 31, 2024.  *See Enbridge v. Whitmer*, R.94, No. 20-cv-01142 (W.D. Mich.).

## REASONS FOR GRANTING REHEARING *EN BANC*

### I.    The *en banc* Court should resolve the conflict that the panel opinion creates with this Court's *Berera* decision.

Enbridge seeks rehearing "to bring to the attention of the entire court … an opinion that directly conflicts with … Sixth Circuit precedent."  6th Cir. I.O.P. 35(a).  Specifically, the panel's published opinion in this case applies a provision of the federal removal statute, 28 U.S.C. § 1446(b)(3), in a manner that conflicts directly with the authoritative construction established by *Berera v. Mesa Medical Group*, 779 F.3d 352 (6th Cir. 2015).  "A published opinion is overruled only by the court *en banc*."  Cir. R. 32.1(b).  "[C]onsideration by the full court is therefore necessary to secure and maintain uniformity of the court's decisions."  Fed.R.App.P. 35(b)(1)(A).

**A.    The statutory framework for timeliness of removal.**    Section 1446(b)(1) says that a notice of removal "shall be filed within 30 days after the receipt by the defendant … of a copy of the initial pleading."  *Id.* § 1446(b)(1).  But section 1446(b)(3) adds that "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after the receipt by the defendant … of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become

7

removable." *Id.* § 1446(b)(3). When Congress added this provision, it "codified previous judicial holdings" that the removal clock will be extended when a case "later becomes or is discovered to be removable." 14C Wright & Miller, *Federal Practice and Procedure* § 3731 & n.29 (4th ed.).

**B.    The *Berera* decision.**  This Court authoritatively construed these provisions in *Berera*. The defendant there removed to federal court more than 30 days after receiving the complaint, so the removal was outside § 1446(b)(1)'s 30-day window. *See* 779 F.3d at 363-64. The defendant argued that the complaint purported to assert *state-law* claims and failed to provide "adequate notice of the federal nature of Berera's claims." *Id.* at 364. The defendant said it received such notice for the first time at a court hearing on August 30, 2013, and it removed within 30 days of that hearing. *See id.* at 363-64. The defendant urged that "the transcript of the August 30 hearing" counted as an "other paper from which it [could] first be ascertained that the case is one which is … removable," making the removal timely under § 1446(b)(3).

This Court agreed, holding that "[t]he 30-day period in § 1446(b)(1) starts to run only if the initial pleading contains *solid and unambiguous information* that the case *is removable*." *Id.* at 364 (cleaned up; emphases added). Otherwise, § 1446(b)(3) governs timeliness and opens a new 30-day window when the defendant receives information showing that the case is unambiguously removable:

"If the initial pleading lacks solid and unambiguous information that the case is removable, the defendant must file the notice of removal 'within 30 days after receipt … of a copy of an amended pleading, motion, order or other paper' that contains solid and unambiguous information that the case is removable."  *Id.* (quoting § 1446(b)(3)).

This Court's interpretation of the statute as requiring "unambiguous information" is consistent with the statutory text—specifically, § 1446(b)(3)'s key term "ascertained"—because, as the panel in this case acknowledged (slip op. 11), to "ascertain" a fact is to learn or confirm that fact *for certain*, i.e., without uncertainty or ambiguity.  *Accord Berera*, 779 F.3d at 364 ("Section 1446(b)'s requirement of solid and unambiguous information is akin to actual notice.").

Applying its construction of § 1446(b), the *Berera* Court held that the defendant's removal was timely.  The complaint was "vague and asserted purported state-law claims" instead of unambiguously disclosing that the plaintiff was advancing a federal-law FICA claim.  *Id.*

Nor did the defendant receive "solid and unambiguous information" when the plaintiff's lawyer later said that the defendant "might be able to identify the factual basis of the claim by reviewing company records of employee complaints to the IRS."  *Id.*  "Although this statement might have led [the defendant] to conclude that the conduct at issue related to federal [tax] withholding matters, it did not constitute

solid and unambiguous information that the case was removable." *Id.* at 364-65 (cleaned up).  And while the defendant had responded that it "would assume that the Complaint contained at least one FICA claim unless Berera notified him otherwise," the plaintiff "had not confirmed [the defendant's] suspicion that the claims related to federal taxes." *Id.* at 365.  The fact that the defendant "had started to suspect that the case involved a FICA claim" was insufficient, because suspicion is *not* "solid and unambiguous information." *Id.*

**C.   *Berera* controls this case.**  Like the complaint in *Berera*, the Attorney General's complaint here did not "contain[] solid and unambiguous information that the case is removable." *Berera*, 779 F.3d at 364 (cleaned up).  Complete diversity is lacking, and the complaint—just like the one in *Berera*—purports to advance only state-law claims.  Slip op., at 3.  Enbridge removed a parallel case under the *Grable* doctrine, a narrow and amorphous exception to the well-pleaded complaint rule. *Id.* at 4-5.  But though Enbridge recognized that it had colorable grounds to argue for *Grable* removal, the matter was far from unambiguous; Michigan officials argued then—and still maintain—that *Grable* is inapplicable. *Id.* at 5, 10.  It was only when the district court in the Governor's case denied the State's remand motion and upheld the removal under *Grable* that Enbridge received "solid and unambiguous information that [this] case is removable."  And Enbridge removed this case within 30 days of receiving that order. *Id.* at 5, 11.

10

**D.    The panel decision directly conflicts with *Berera* and the statutory language.**    The panel rejected Enbridge's invocation of *Berera* on two grounds. (Slip op. 11-12.)  Both are faulty.

*First*, the panel deemed *Berera* "distinguishable on its facts."  (Slip op. 11.) "It was a case of artful pleading" by a plaintiff hoping to disguise the federal nature of her claims to stay in state court, whereas "Enbridge does not argue that the Attorney General 'carefully crafted her complaint to circumvent federal jurisdiction.'"  *Id.* (quoting *Berera*'s analysis of federal jurisdiction, not its timeliness discussion).

But the scope of a binding precedent turns on the scope of its reasoning.  And nothing in *Berera* suggests that the outcome on timeliness turned on whether the plaintiff had been willful or artful in casting a claim that arose under federal law as a mere state-law claim.  *See* 779 F.3d at 363-65 (discussing timeliness).  Timeliness turned on when the defendant received "solid and unambiguous information that the case is removable," which "is akin to actual notice."  *Id.* at 364.  Federal jurisdiction in *Berera* turned on the artful pleading exception to the well-pleaded complaint rule rather than, as here, the *Grable* exception.  *Id.* at 357-58 (discussing jurisdiction). But both exceptions can leave removability ambiguous, denying the defendant notice and bringing *Berera*'s construction of § 1446(b) into play.  *Cf. Grable*, 545 U.S. at 321 (Thomas, J., concurring) (the *Grable* exception "is anything but clear").

*Second*, the panel reasoned that a case "is removable" under § 1446(b)—and the 30-day clock thus begins to run—as soon as "the defendant has a good-faith basis to argue that at least one of the plaintiff's claims depends on the application of federal law." (Slip op. 8.) This standard, which the panel apparently drew from Federal Rule of Civil Procedure 11 (*see id.*), is inconsistent with § 1446(b) and *Berera*. Section 1446(b) is phrased in terms of whether the case "is or has become removable," not whether a defendant some good-faith basis to argue removability.

As the panel elsewhere recognized, "[f]or a case to be removable, a federal district court must have 'original jurisdiction' over the case." Slip op. 11 (quoting 28 U.S.C. § 1441(a)). If there is no federal jurisdiction, then it cannot be said the case "is removable." To the contrary, if the court in a removed case determines that it lacks jurisdiction, "the case shall be remanded." 28 U.S.C. § 1447(c). That the defendant had a "good-faith basis to argue," albeit incorrectly, that there was federal jurisdiction simply means that the defendant should not be assessed "attorney fees[] incurred as a result of the removal." *Id.*; *see Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). But having a "good-faith basis to argue" federal jurisdiction does not mean having "solid and unambiguous information" that a case "is removable."

Moreover, *Berera* makes clear what sort of notice a defendant must have to start the § 1446(b) clock running: "solid and unambiguous information that the case

12

is removable," "akin to actual notice." 779 F.3d at 364. The panel here read this to mean only that the defendant must "learn with certainty that there are good-faith grounds on which to argue for federal jurisdiction." (Slip op. 12.) That conclusion is irreconcilable with *Berera*'s language, reasoning, and outcome.

There, the defendant suspected (correctly) that the plaintiff was pursuing a federal claim. The suspicion was so strong that the defendant's counsel "filed a motion for a more definitive statement, arguing that the nature of Berera's claims was unclear"; discussed the issue with the plaintiff's counsel; wrote the plaintiff's counsel a letter explaining that the conversation "led [him] to conclude that the conduct at issue related to federal withholding matters"; and advised that he "would assume that the Complaint contained at least one FICA claim unless [the plaintiff's counsel] notified him otherwise." 779 F.3d at 355. The defendant plainly had good-faith grounds for removal, such that it would not have been sanctioned for removing. Yet none of this was enough to start the § 1446(b)(3) clock running. Though "counsel had started to suspect that the case involved a FICA claim" and was therefore removable, he nonetheless "lacked solid and unambiguous information that the case was removable." *Id.* at 365.

Relatedly, the panel here held that Enbridge had to establish that the Attorney General's complaint was not removable when it was filed and only became so as a result of some "later change." (Slip op. 7, 9.) That requirement is also at odds with

13

*Berera*, where the defendant plainly could not have satisfied it: The complaint there was removable all along; there was federal jurisdiction under the artful pleading doctrine. But this Court did not ask whether the complaint was in fact removable when filed. It asked only when the defendant received "solid and unambiguous information that the case is removable." 779 F.3d at 364.

In short, a defendant's mere recognition that it has a good-faith argument for removal is insufficient under § 1446(b)'s plain text and *Berera*. The statute asks when the defendant could "ascertain[]"—i.e., learn with certainty—"that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). By using the term "ascertained," Congress made clear that a defendant is entitled to remove within 30 days after the basis for removal becomes clear and settled. Webster's II New College Dictionary at 65 (1995) ("ascertain" means "settled" or "sure"); Black's Law Dictionary (4th ed. 1951) ("To fix; to render certain or definite[.]"). Consistent with *Berera*, this language makes clear that the test is solid and unambiguous *certainty*, not mere good-faith suspicion. It also shows that the § 1446(b)(3) window can apply even to a case that already "is … removable" if, as here and in *Berera*, the initial complaint did not provide the requisite certainty.

*Berera* promotes certainty and judicial efficiency. It guards against premature protective removals and minimizes removal litigation. On the other hand, the

14

panel's Rule 11 standard will inspire protective removals and repetitive removal litigation.

The full Court should grant review to restore the consistency of its precedents on this important removal issue. *En banc* consideration is especially appropriate given that, as the panel noted (Slip op. 6 n.2), appellate review of rulings on removal timeliness is usually unavailable.

## II.    The *en banc* Court should resolve the conflict that the panel opinion creates with other Courts of Appeal.

The panel's decision conflicts with decisions of the Eleventh and Fifth Circuits. A defendant's rights should not "depend upon where the case is litigated." Fed.R.App.P. 35, Advisory Committee Notes (1998 Amendments).

Here, the district court ruled that extraordinary circumstances supported removal irrespective of the 30-day time limit. (R.23, PageID##618-23.) The statutory removal clock is not jurisdictional. (*Id*.). The circumstances here easily satisfy an exceptional circumstances standard—including the critical federal interests at stake, the risk of waste and inconsistent judgments from parallel state and federal litigation, and the State's gamesmanship in seeking to evade federal-court jurisdiction. (*Id*.) The State official's gamesmanship here is wasteful, unbecoming, and inconsistent with the federal court's virtually unflagging obligation to exercise federal jurisdiction where it exists. (Chambers' *Amicus* Br. 13-16.)

15

In reversing, the panel ruled that "§ 1446(b)'s time limitations are mandatory" and "leave no room for equitable exceptions." (Slip op. 17). As the panel recognized, this conclusion is inconsistent with *Loftin v. Rush*, 767 F.2d 800 (11th Cir. 1985). In *Loftin*, the Eleventh Circuit refused to remand a case that had been removed "far beyond the 30-day time limit established by 28 U.S.C. § 1446(b)." 767 F.2d at 805. The court recognized that the plaintiff had not "waive[d] the timeliness issues but, rather, has advanced it promptly." *Id.* While the failure to waive requires a remand to the district court "in most instances," the appellate court in *Loftin* found exceptional circumstances warranting retaining the case: The state court had entered a garnishment judgment against the United States greater than allowed by statute. *See id.* at 804. "The timeliness of a removal petition is not jurisdictional and [courts] therefore have the power to review even an untimely petition." *Id.*

The panel maligned *Loftin* as a "39-year-old case, distinguishable, and out-of-circuit …." Slip. 0p. 17. While *Loftin* was issued in 1985, it remains good law in the Eleventh Circuit and is followed by the lower courts there. *E.g. Premier Holiday Int'l v. Actrade Capital*, 105 F. Supp. 2d 1336 (N.D. Ga. 2000); *Holder v. City of Atlanta*, 925 F. Supp. 783 (N.D. Ga. 1996). And while the panel made a perfunctory statement that *Loftin* was "distinguishable," it identified no meaningful difference between that case and this one. In both, it was alleged that the defendant had removed far beyond the 30-day window. In both, the district courts found important,

16

overriding federal issues at stake. Yet the outcomes were materially different. *Loftin* held that the case should remain in federal court; the panel here ruled that the time limitations cannot be excused in *any* circumstances.

The Fifth Circuit follows the Eleventh. In *Gillis v. Louisiana*, 294 F.3d 755 (5th Cir. 2002), there was a dispute about whether the defendants had properly removed within the 30-day window. *See id.* at 759. The defendant's attorney did not have authority to file removal "until thirty-nine days after the expiration of the removal period …." *Id.* The Fifth Circuit ruled that the untimeliness could be excused, finding "the circumstances in the case to be exceptional." *Id.*; Wright & Miller, *supra,* § 3731 & n.31 ("Some circuits have adopted a doctrine [of] … exceptional circumstances … permit[ting] removal even when the defendant fails to comply fully with … the 30-day removal period.").

This case—which raises momentous constitutional and foreign-affairs issues—is a paradigm for why a delay should not categorically preclude the exercise of federal-court jurisdiction. As Canada explained, any "unilateral action by a single state" to shut down Line 5 "would impair important U.S. and Canada foreign policy interests …." (Slip op. 5.)

17

## CONCLUSION

The Court should grant rehearing *en banc*.

Respectfully submitted,

/s/  Phillip J. DeRosier
Phillip J. DeRosier
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3866
pderosier@dickinsonwright.com

Peter H. Ellsworth
Jeffery V. Stuckey
DICKINSON WRIGHT PLLC
123 W. Allegan Street, Suite 900
Lansing, MI 48933
(517) 371-1730
pellsworth@dickinsonwright.com
jstuckey@dickinsonwright.com

/s/ Alice E. Loughran
Alice E. Loughran
Mark C. Savignac
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-6202
aloughran@steptoe.com
msavignac@steptoe.com

/s/  John J. Burch
John J. Bursch
BURSCH LAW PLLC
9339 Cherry Valley Avenue SE, #78
Caledonia, MI 49316
(616) 450-4235
jbursch@burschlaw.com

*Counsel for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of FRAP Rules 32 and 40(b)(1) because it contains 3900 words, excluding material exempted by FRAP Rule 32(f) and Sixth Circuit Rule 32(b).

2.      This brief complies with the typeface and type-style requirements of FRAP Rule 32(a)(5) and (6) because it has been prepared in a proportionally spaced, 14-point Times New Roman typeface using Microsoft Word 2016.

Dated: July 15, 2024

                                                /s/  Alice E. Loughran
                                                   Alice E. Loughran
                                                   STEPTOE & JOHNSON LLP
                                                   (202) 429-6202

**CERTIFICATE OF SERVICE**

I certify that on July 15, 2024, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

/s/  Alice E. Loughran
Alice E. Loughran
STEPTOE & JOHNSON LLP
(202) 429-6202

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0134p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

DANA NESSEL, Attorney General of the State of
Michigan, on behalf of the people of the State of
Michigan,

*Plaintiff-Appellant,*

> No. 23-1671

*v.*

ENBRIDGE ENERGY, LP; ENBRIDGE ENERGY COMPANY,
INC.; ENBRIDGE ENERGY PARTNERS, L.P.,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:21-cv-01057—Janet T. Neff, District Judge.

Argued: March 21, 2024

Decided and Filed: June 17, 2024

Before: GRIFFIN, THAPAR, and NALBANDIAN, Circuit Judges.

———————————

### COUNSEL

**ARGUED:** Daniel P. Bock, OFFICE OF THE ATTORNEY MICHIGAN GENERAL, Lansing,
Michigan, for Appellant. Alice Loughran, STEPTOE & JOHNSON LLP, Washington, D.C., for
Appellees. **ON BRIEF:** Daniel P. Bock, Keith D. Underkoffler, OFFICE OF THE
ATTORNEY MICHIGAN GENERAL, Lansing, Michigan, for Appellant. Alice Loughran,
David H. Coburn, Mark C. Savignac, STEPTOE & JOHNSON LLP, Washington, D.C., John J.
Bursch, BURSCH LAW PLLC, Caledonia, Michigan, Phillip J. DeRosier, DICKINSON
WRIGHT PLLC, Detroit, Michigan, Jeffery V. Stuckey, DICKINSON WRIGHT PLLC,
Lansing, Michigan, for Appellees. Andy Buchsbaum, BUCHSBAUM & ASSOCIATES LLC,
Ann Arbor, Michigan, Joseph T. Heegaard, OFFICE OF THE MINNESOTA ATTORNEY
GENERAL, St. Paul, Minnesota, James M. Olson, OLSON, BZDOK & HOWARD, PC,
Traverse City, Michigan, Christopher R. Clark, EARTHJUSTICE, Chicago, Illinois, Jonathan D.
Newman, SHERMAN DUNN, P.C., Washington, D.C., Elbert Lin, HUNTON ANDREWS
KURTH LLP, Richmond, Virginia, for Amici Curiae.

---

## OPINION

---

GRIFFIN, Circuit Judge.

Michigan Attorney General Dana Nessel seeks to shut down Enbridge's Line 5 Pipeline, which runs underwater across the Straits of Mackinac between Michigan's Lower and Upper Peninsulas. The merits of this litigation are not before us. Instead, we consider only which court should decide this case: does it belong in Michigan state court (where the Attorney General filed it in 2019) or in federal court (to where Enbridge removed it over two years later)? We hold that Enbridge failed to timely remove this case to federal court under 28 U.S.C. § 1446(b), and there are no equitable exceptions to the statute's deadlines for removal. Thus, under these circumstances, this case belongs in Michigan state court. Because the district court held to the contrary, we reverse the district court and direct it to remand this case to Michigan's 30th Circuit Court for the County of Ingham.

I.

Defendant Enbridge[1] owns and operates the Line 5 Pipeline, which is part of a pipeline network that transports petroleum products to refineries in the Midwest, Ontario, and Quebec. Line 5 runs from northwestern Wisconsin through Michigan's Upper and Lower Peninsulas and then into Canada—terminating in Sarnia, Ontario, just across the border from Port Huron, Michigan. Between Michigan's peninsulas, it traverses the Straits of Mackinac pursuant to a 1953 easement issued by the State of Michigan, which owns the Straits' bottomlands. In recent years, that easement has been the subject of litigation in several cases, two of which are relevant here.

---

[1]The defendants here are Enbridge Energy, LP; Enbridge Energy Company, Inc.; and Enbridge Energy Partners, L.P. (collectively, "Enbridge").

A.

*The Attorney General's case.*   On June 27, 2019, Michigan Attorney General Dana Nessel filed this case in Michigan state court, the 30th Circuit Court for the County of Ingham. The summons and complaint were served on Enbridge on July 12, 2019.  The complaint seeks to enjoin Enbridge's continued operation of Line 5 based on alleged violations of three state laws: the public-trust doctrine, common-law public nuisance, and the Michigan Environmental Protection Act.

On September 16, 2019, Enbridge responded to the complaint by moving for summary disposition, arguing that the complaint failed to state a claim on which relief could be granted. Enbridge argued, among other things, that the Attorney General's claims under the public-trust doctrine were preempted by the federal Pipeline Safety Act, which it claimed occupies the field of pipeline-safety regulation.  The Attorney General then filed her own dispositive motion.

In May 2020, the state court held oral argument on those dispositive motions.  Before the argument, the state court asked the parties to be prepared to answer questions about federal preemption.  Much of the argument indeed focused on preemption issues, including whether the Attorney General's claims were preempted by either the Pipeline Safety Act or the federal Submerged Lands Act.  The court requested post-argument briefing on these preemption issues. In Enbridge's supplemental brief, Enbridge reiterated its preemption defenses, arguing that the Pipeline Safety Act and the Submerged Lands Act preempted Michigan's public-trust authority applied to an oil pipeline on submerged bottomlands.

While those dispositive motions were pending, the Attorney General filed a separate motion for a temporary restraining order and preliminary injunction on June 25, 2020.  That motion stemmed from a recently disclosed report about issues with Line 5's infrastructure at the Straits.  Enbridge actively participated in the briefing and argument that followed.  The motion resulted in a temporary restraining order that briefly enjoined the operation of the pipeline on the Straits' bottomlands.  The court later authorized Enbridge to restart the pipeline's operations after complying with its federal safety regulator's requirements.

B.

*The Governor's case.*  On November 13, 2020, before a ruling by the Ingham County Circuit Court on the competing motions in the Attorney General's case, Michigan Governor Gretchen Whitmer issued a notice of revocation of the 1953 easement, calling for Line 5 to be shut down by May 2021, and simultaneously filed a complaint in state court to enforce the notice.  Her complaint closely paralleled the Attorney General's.  Indeed, according to Enbridge, it "repeat[ed] the same basic facts and claims alleged in the Attorney General's complaint," and these two lawsuits involved the "same controversy" between the "same parties or their privies."

Enbridge timely removed the Governor's case to the United States District Court for the Western District of Michigan on November 24, 2020.  *See* 28 U.S.C. § 1446(b)(1).  Enbridge's notice of removal asserted that the district court had federal-question jurisdiction under 28 U.S.C. § 1331 because the action "ar[ose] under" federal law.  Specifically, Enbridge argued that the district court's subject-matter jurisdiction derived from the "substantial federal question" doctrine, as recognized in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 312–13 (2005).  In Enbridge's view, the Governor's state-law claims necessarily raised substantial questions of the federal government's foreign-affairs powers and preemption under the Pipeline Safety Act and the Submerged Lands Act.  Still within 30 days of the complaint's service, Enbridge then filed an amended notice of removal on December 10, 2020, asserting additional grounds for federal-question jurisdiction, including arguments that the claims arise under federal common law.

The Governor moved to remand the case to state court, arguing that the district court lacked jurisdiction over her exclusively state-law claims.  The Canadian government then filed an amicus brief in opposition to the motion to remand, arguing that "Michigan's Shutdown Order Presents Substantial and Important Treaty Issues" under the 1977 Transit Pipelines Treaty between the United States and Canada.  That treaty covers gas and oil pipelines crossing the border between Canada and the United States and prevents any public authority from "interfering with" the cross-border transmission of gas and oil.  Agreement Between the Government of the United States of America and the Government of Canada Concerning Transit Pipelines, art. I(a), art. II(1), Jan. 28, 1977, 28 U.S.T. 7449.  In its amicus brief, the Canadian government argued

that "unilateral action by a single state" to shut down Line 5 "would impair important U.S. and Canadian foreign policy interests by raising doubts about the capacity of the Government of the United States to make and uphold commitments without being undermined by an individual state." On October 4, 2021, the Canadian government filed a supplemental amicus letter notifying Enbridge and the district court that Canada had formally invoked the treaty's dispute-resolution provision, beginning negotiations between the governments of Canada and the United States over Line 5. *See id.*, art. IX.

The district court denied the Governor's motion to remand on November 16, 2021, a date critical to Enbridge's argument for timely removal of this case. The court held that it had federal-question jurisdiction under *Grable* because resolution of the Governor's claims necessarily requires interpretation of federal law (namely, the Submerged Lands Act, the Pipeline Safety Act, and the 1977 Treaty) and the extent to which those laws "burden[]" Michigan's ownership of Great Lakes bottomlands. *Michigan v. Enbridge Energy, Ltd. P'ship*, 571 F. Supp. 3d 851, 859, 862 (W.D. Mich. 2021). Soon thereafter, the Governor voluntarily dismissed her case.

### C.

*Removal of the Attorney General's case.* Citing both the district court's order denying the motion to remand in the Governor's case and § 1446(b)(3)'s provision that permits removal within 30 days after the defendant's receipt of an "order . . . from which it may first be ascertained that the case is one which is or has become removable," Enbridge removed this case to federal court on December 15, 2021. Although 887 days had passed since receipt of the Attorney General's complaint, Enbridge argued removal was nonetheless timely because it could not have ascertained that there were grounds for removal until the district court denied the motion to remand in the Governor's case.

On January 14, 2022, the Attorney General moved to remand this case to state court on two grounds: untimely removal and lack of subject-matter jurisdiction. The district court denied the motion on both grounds. It excused Enbridge's untimely removal based on equitable principles. And it estopped the Attorney General from challenging subject-matter jurisdiction in

this case, relying on its finding of subject-matter jurisdiction in the Governor's case. It then certified its order for interlocutory appeal, and we granted the Attorney General permission to appeal.

II.

We review a denial of a motion to remand de novo. *Davis v. McCourt*, 226 F.3d 506, 509 (6th Cir. 2000). The Attorney General seeks remand on the same two independent grounds it raised below: untimely removal and lack of subject-matter jurisdiction.

In terms of sequencing, we need not address subject-matter jurisdiction before we address the timeliness of removal. Although federal courts must resolve questions of subject-matter jurisdiction before deciding a case on the merits, we have "leeway to choose among threshold grounds for denying audience to a case on the merits." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (internal quotation marks omitted); *see also* Scott Dodson, *In Search of Removal Jurisdiction*, 102 Nw. U. L. Rev. 55, 69 (2008) (noting that, in terms of "decisional sequencing," *Sinochem* suggests that jurisdictional issues do not have "rigid priority" over procedural issues). Consistent with this discretion and following other courts that have remanded cases because of untimely removal without addressing questions of subject-matter jurisdiction, *see, e.g.*, *Tr. Servs. of Carolina, LLC v. Rivera*, 2012 WL 1664224, at *1–2 (W.D.N.C. May 2, 2012); *In re Foreclosure of a Deed of Tr.*, 2008 WL 5234301, at *2 (E.D.N.C. Dec. 15, 2008); *Laughlin Assocs., Inc. v. Durand*, 1997 WL 998381, at *1 n.1 (D. Nev. Oct. 17, 1997), *aff'd*, 156 F.3d 1236 (9th Cir. 1998) (unpublished table decision); *Steadman v. Sinclair*, 1996 WL 257664, at *2 n.2 (S.D.N.Y. May 16, 1996),[2] we do not decide whether the district court had subject-matter jurisdiction over this case because Enbridge's removal was untimely.

---

[2]It gives us no pause that there appear to be few, if any, appellate cases deciding a question of removal timeliness before deciding a question of subject-matter jurisdiction, considering 28 U.S.C. § 1447(d)'s prohibition of appellate review of remand orders for removal cases. *See Wisconsin v. Amgen, Inc.*, 516 F.3d 530, 533 (7th Cir. 2008).

A.

"The party seeking removal bears the burden of establishing its right thereto." *Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989). To remove a civil case from state to federal court, a defendant must meet the requirements for removal detailed in § 1446. *See Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). That statute requires the defendant to file a notice of removal, 28 U.S.C. § 1446(a), and provides time limits to do so, *id.* § 1446(b). Section 1446(b)(1) states that the notice of removal "shall be filed within 30 days" of the defendant's receipt of the complaint or summons. *Id.* § 1446(b)(1). However, § 1446(b)(3) allows relief from that 30-day deadline under the following specific circumstances:

> [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

*Id.* § 1446(b)(3).

Enbridge unquestionably did not comply with § 1446(b)(1)'s initial 30-day removal deadline from the date of service of the complaint. The Attorney General served Enbridge with the complaint on July 12, 2019, so, under § 1446(b)(1), Enbridge needed to file its notice of removal by August 12, 2019. *See* Fed. R. Civ. P. 6(a)(1)(C). Enbridge missed that deadline by over two years.

Thus, at issue is whether Enbridge can avail itself of § 1446(b)(3)'s later 30-day window. By the statute's plain terms, that extension applies only if three elements are met. *See A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 209–10 (3d Cir. 2014). First, Enbridge must show that "the case stated by the initial pleading [was] not removable." 28 U.S.C. § 1446(b)(3). Second, it must show that some variable changed that transformed this initially non-removable case into one that was removable. And third, Enbridge must show that, no more than 30 days before December 15, 2021—when it filed its notice of removal—it received "a copy of an amended pleading, motion, order or other paper from which it [could] first be ascertained that the case is one which is or has become removable." *Id.*

For a case to be removable, a federal district court must have "original jurisdiction" over the case.[3] *Id.* § 1441(a); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3721.1 (Rev. 4th ed. 2023). Enbridge bases its removal arguments on 28 U.S.C. § 1331's grant of "original jurisdiction [over] all civil actions arising under the Constitution, laws, or treaties of the United States"—i.e., federal-question jurisdiction. On that ground, if any one of the plaintiff's claims depends on the application of federal law, the entire case may be removed. 28 U.S.C. § 1441(c); *see also* 14C Wright & Miller § 3722. Further, removability requires that a defendant be able to articulate that ground in its notice of removal, which must be "signed pursuant to Rule 11 of the Federal Rules of Civil Procedure." 28 U.S.C. § 1446(a). Under that standard, a signature certifies that, to the best of counsel's "knowledge, information, and belief," the contentions in the notice of removal are supported by existing law or a "nonfrivolous" argument for extending existing law. Fed. R. Civ. P. 11(b). In other words, a defendant must have a "good-faith" basis for legal arguments in the notice of removal. *King v. Whitmer*, 71 F.4th 511, 528 (6th Cir. 2023); *see also Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 970 (8th Cir. 2007) (applying Rule 11 in removal context). Thus, a case becomes removable on federal-question grounds when the defendant has a good-faith basis to argue that at least one of the plaintiff's claims depends on the application of federal law.

## B.

Enbridge asserts that federal-question jurisdiction now exists in either of two ways. First, under the *Grable* doctrine, the Attorney General's state-law claims necessarily turn on a substantial and disputed issue of federal law—the extent to which the Submerged Lands Act, the Pipeline Safety Act, and the 1977 Treaty "burden" Michigan's authority over the Straits' bottomlands. *See Grable*, 545 U.S. at 312–13. Second, because the Attorney General's state-law claims could cause major implications for foreign affairs, an area of "uniquely federal interest[]," those claims arise under federal common law via the foreign-affairs doctrine.

---

[3]The jurisdiction and removal statutes—and thus this opinion—alternatively use the terms "original jurisdiction" and "subject matter jurisdiction." *Compare* 28 U.S.C. § 1441(a) (referring to "original jurisdiction"), *with id.* § 1447(c) (referring to "subject matter jurisdiction"). For our purposes, these terms are synonymous, and § 1331 is a fount of both.

*See Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 116 (2022) (citation omitted); *see also Republic of Phil. v. Marcos*, 806 F.2d 344, 352–53 (2d Cir. 1986); *Torres v. S. Peru Copper Corp.*, 113 F.3d 540, 543 (5th Cir. 1997).

We express no opinion on the merits of Enbridge's jurisdictional theories. Rather, to determine whether Enbridge can avail itself of § 1446(b)(3)'s later removal window, we assume that either theory could give rise to federal jurisdiction and decide only (1) whether that theory made this case removable when the complaint was filed; (2) if not, whether some later change made the case removable; and (3) when Enbridge could have first "ascertained" that the case was removable. As set forth next, we agree with the Attorney General that Enbridge did not comply with § 1446(b)(3)'s requirements.

1.

Viewed through this timing lens, both of Enbridge's jurisdictional theories fail on § 1446(b)(3)'s first or third elements. First, Enbridge cannot establish that "the case stated by the initial pleading [was] not removable." 28 U.S.C. § 1446(b)(3). Enbridge's own actions support this conclusion—it timely removed the Governor's case on *Grable* grounds in November 2020, and soon after amended that notice of removal in December 2020 with its argument about federal common law. As Enbridge admits, the Attorney General's and Governor's complaints both featured "the same basic facts and claims" and involved the "same controversy" between the "same parties or their privies." Thus, assuming either of Enbridge's jurisdictional theories are meritorious, the Attorney General's case was removable on those grounds from its outset, just like the Governor's case was.

Enbridge's appellate brief offers no explanation regarding how the Governor's case could be removable from its outset but this case was not. At oral argument, Enbridge argued (for the first time) that the Governor's easement-revocation notice, calling for the shutdown of Line 5 within six months, sparked a "significant foreign-affairs controversy" that, in turn, made the Governor's and Attorney General's cases such that they arose under federal law under either *Grable* or federal common law. *See Resurrection Sch. v. Hertel*, 35 F.4th 524, 530 (6th Cir. 2022) (en banc) (suggesting forfeiture).

But while this unpreserved argument might explain how this case initially was not removable and then later became so, it cannot satisfy § 1446(b)(3)'s third element because it clashes with Enbridge's argument about the first "paper" it received that allowed it to "ascertain[]" that this case had become removable. Enbridge asserts that first "paper" was the district court's November 2021 order denying remand in the Governor's case. Even if papers filed in one case could trigger § 1446(b)(3)'s later removal window in another, *but see Amgen*, 516 F.3d at 533–34 (collecting cases suggesting that § 1446(b)(3)'s reference to "an amended pleading, motion, order or other paper" refers only to papers in the suit to be removed), Enbridge's removal in the Governor's case shows that it was the Governor's complaint, not the district court's order denying remand, that first gave Enbridge good-faith grounds to remove. Regardless of whether the Governor's notice sparked a "foreign-affairs controversy," Enbridge plainly had good-faith grounds to remove when it received the Governor's complaint, and then promptly removed, in November 2020. Indeed, by December 2020, Enbridge had already articulated both of its jurisdictional theories in its amended notice of removal in the Governor's case. Yet Enbridge did not remove *this* case until a full year later—far exceeding § 1446(b)(3)'s window of 30 days. Thus, under either of Enbridge's jurisdictional theories, its arguments for timely removal fail under § 1446(b)(3)'s first or third elements.

2.

Enbridge's arguments to the contrary are not persuasive. Enbridge tries to justify the delay between its late 2020 removal of the Governor's case and December 2021 removal of this case by focusing on the word "ascertain" in § 1446(b)(3) and our interpretation of that statute in *Berera v. Mesa Medical Group, PLLC*, 779 F.3d 352, 364 (6th Cir. 2015). There, we stated that "[t]he 30-day period in § 1446(b)(1) starts to run only if the initial pleading contains solid and unambiguous information that the case is removable." *Id.* (internal quotation marks omitted). We added that, "[i]f the initial pleading lacks solid and unambiguous information that the case is removable," then the defendant must remove "'within 30 days after receipt of a copy of an amended pleading, motion, order or other paper' that contains solid and unambiguous information that the case is removable." *Id.* (ellipses omitted) (quoting § 1446(b)(3)). Applying this language, Enbridge argues that the question is not just whether the case was "removable"

when the complaint was filed but whether it was "unambiguously removable." It further contends that the first time it had "solid and unambiguous information" that this action was removable—i.e., the first time it "ascertained" removability—was when it received the district court's November 2021 order denying remand in the Governor's case.

But, for two reasons, *Berera* cannot save Enbridge's belated removal. First, *Berera* is distinguishable on its facts. It was a case of artful pleading, in which the plaintiff tried to circumvent federal jurisdiction "by artfully casting [her] essentially federal law claims as state-law claims." *Id.* at 358 (citation omitted). There, in response to the plaintiff's threadbare complaint, which purported to assert only state-law claims, the defendant had to file a motion for a more definitive statement to learn about the claims' true nature. *Id.* at 355. The plaintiff's intention to assert federal claims became clear only after her counsel's admissions at a hearing on that motion. *Id.* at 356. Such obfuscation by the plaintiff deprived the defendant of the opportunity to learn of grounds for removal.

Here, by contrast, Enbridge does not argue that the Attorney General "carefully crafted her complaint to circumvent federal jurisdiction." *Id.* at 358. Rather, Enbridge argues only that the Attorney General's complaint is the rare case in which federal jurisdiction exists but was uncertain because the complaint alleges only state-law claims, the parties are not diverse, and the *Grable* and foreign-affairs doctrines are "anything but clear." *See Grable*, 545 U.S. at 321 (Thomas, J., concurring). At bottom, Enbridge contends that its jurisdictional theories were complex, necessitating additional time to remove. While we appreciate the difficulty of navigating complicated doctrines and applying them to unique facts under time constraints, that is what § 1446(b) requires. And Enbridge showed that it could make these arguments under a tight deadline—it timely filed its notice of removal (and amended notice of removal) articulating these theories within 30 days of its receipt of the complaint in the Governor's case.

Second, § 1446(b)(3)'s use of "ascertain[]" and *Berera*'s reference to "solid and unambiguous information" does not transform the removability inquiry into whether and when a case was "unambiguously removable." Granted, as Enbridge points out, to "ascertain" means "to learn with certainty." *Ascertain*, Random House Webster's Unabridged Dictionary (2d ed. 2001). But to ascertain that a case is removable does not mean to learn with certainty that there

is federal jurisdiction. Rather, it means to learn with certainty that there are good-faith grounds on which to argue for federal jurisdiction. In other words, as *Berera* states: "Section 1446(b)'s requirement of solid and unambiguous information is akin to actual notice." 779 F.3d at 364. If at first a case is not removable, § 1446(b)(3) ensures that the defendant "has an opportunity to remove upon being given notice" of grounds on which it can exercise that right. *Id.* (citation and ellipses omitted). Enbridge had notice of good-faith grounds for removability because it removed the "same controversy" on the same grounds a full year before it removed this case.

Given this conclusion, Enbridge's additional argument that Canada's later invocation of the 1977 Treaty first made this case removable is without merit. And even if that argument could somehow show that this case first became removable based on Canada's declarations, it too fails under § 1446(b)(3)'s third element. On October 4, 2021, the Canadian government filed a supplemental amicus letter in the Governor's case notifying Enbridge and the court that Canada had formally invoked the treaty's dispute-resolution provision. Enbridge confirmed its understanding of that letter's importance in a filing of its own on October 12, 2021, arguing that "Michigan's claims have directly and significantly affected U.S. foreign relations with Canada, making removal appropriate." Thus, Canada's October 4 letter in the Governor's case was a paper from which Enbridge could ascertain removability of this case—the "same controversy" as the Governor's case. But Enbridge did not remove this case within 30 days of its receipt of that letter; it instead waited until December 15, 2021—72 days later.

## C.

In sum, under either of Enbridge's jurisdictional theories, Enbridge had good-faith grounds to argue for federal jurisdiction more than 30 days before it removed this case. Enbridge missed § 1446(b)(1)'s initial window for removal, and to the extent § 1446(b)(3)'s later removal window was ever open, Enbridge missed that one too. Enbridge's removal was therefore untimely under § 1446(b).

## III.

Next, we must decide whether the district court correctly ruled that § 1446(b) permits an equitable exception to the statutory deadlines. Although Enbridge argues that we should review

the district court's determination that equity favored Enbridge for abuse of discretion, whether a statute permits an equitable exception in the first place is a legal question that we review de novo. *Cf. In re Maughan*, 340 F.3d 337, 341 (6th Cir. 2003).

Statutory time limits exist on a spectrum of how strictly courts enforce them. They range from "jurisdictional" conditions on the stricter end to mere "time-related directives" on the laxer. *See Dolan v. United States*, 560 U.S. 605, 610–11 (2010). In the middle is the broad category of "claims-processing rules," which "do not limit a court's jurisdiction, but rather regulate the timing of [requests] brought before the court." *Id.*

Federal courts have "no authority to create equitable exceptions to jurisdictional requirements." *Bowles v. Russell*, 551 U.S. 205, 214 (2007). Indeed, immunity from equitable exceptions is one of several hallmark characteristics of a jurisdictional rule. If a statutory time limitation "is taken to be jurisdictional, waiver becomes impossible, meritorious excuse irrelevant (unless the statute so provides), and *sua sponte* consideration in the courts of appeals mandatory." *Id.* at 216–17 (2007) (Souter, J., dissenting) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)); *see also Day v. McDonough*, 547 U.S. 198, 205 (2006).

We know that § 1446(b)'s time limits are not jurisdictional because they do not possess all these characteristics—specifically, removal-timing issues may be raised only by the plaintiff and only within a strict window of time. Section 1447(c) provides that a plaintiff's motion to remand "on the basis of any defect other than lack of subject matter jurisdiction," such as untimely removal, "must be made within 30 days after the filing of the notice of removal." Thus, unlike "jurisdictional" statutory deadlines, § 1446(b)'s removal deadlines are not ones that "authorize *sua sponte* remands for purely procedural defects," and they are subject to forfeiture if not raised in a timely motion to remand. *Page v. City of Southfield*, 45 F.3d 128, 133 (6th Cir. 1995); *cf. Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 429 n.2 (6th Cir. 2006).

But simply confirming that § 1446(b)'s deadlines are non-jurisdictional does not resolve the question before us. After all, "[t]he mere fact that a time limit lacks jurisdictional force . . . does not render it malleable in every respect." *Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 192 (2019). Certain deadlines, though non-jurisdictional, are "not subject to

equitable tolling." *Id.* When properly raised by an opposing party, these "mandatory" claims-processing rules "are 'unalterable,'" *id.* (quoting *Manrique* v. *United States*, 581 U.S. 116, 121 (2017)), and "assure relief to a party properly raising them," *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam). In other words, "[r]ules in this mandatory camp are not susceptible of the equitable approach" the district court applied here. *Nutraceutical*, 586 U.S. at 192; *see also* Scott Dodson, *Mandatory Rules*, 61 Stan. L. Rev. 1, 5–9 (2008). Because the Attorney General properly invoked § 1446(b)'s removal time limits in a timely motion to remand, *see* 28 U.S.C. § 1447(c), we must determine whether those non-jurisdictional time limits are mandatory and thus immune from equitable exceptions.

Although we presume that we can grant equitable exceptions to non-jurisdictional statutes, *Holland v. Florida*, 560 U.S. 631, 645–46 (2010), that presumption is rebuttable, *see Harrow v. Dep't of Def.*, 144 S. Ct. 1178, 1186 (2024) (remanding for consideration of whether a non-jurisdictional appeal deadline is subject to equitable tolling). Whether "equitable tolling is available" under a particular statute "is fundamentally a question of statutory intent." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). Here, applying our usual tools of statutory construction, we have "good reason to believe that Congress did *not* want" equitable exceptions to apply to § 1446(b)'s time limitations. *United States v. Brockamp*, 519 U.S. 347, 350 (1997).

We begin with the text, focusing on whether the statute as a whole allows flexibility for extra-textual exceptions. *See Nutraceutical*, 586 U.S. at 192–93; *see also Harrow*, 144 S. Ct. at 1183–84. Section 1446(b)(1) sets the default rule: a notice of removal "shall be filed within 30 days" after the defendant's receipt of the initial pleading or summons. If the defendant receives those documents at different times, the applicable deadline is "whichever period is shorter," suggesting an intent for strict enforcement. *Id.*

The statute then includes explicit exceptions—and carveouts from those exceptions—to that default rule. It first includes an exception in cases involving multiple defendants served at different times (which is not applicable here). *Id.* § 1446(b)(2)(C). It then provides for § 1446(b)(3)'s later 30-day removal window, which, as discussed above, applies only "if the case stated by the initial pleading is not removable" and a later-received paper gives the defendant notice that the case has become removable. *Id.* § 1446(b)(3). But Congress further limited that

exception—it applies "[e]xcept as provided in subsection (c)." *Id.* Subsection (c), in turn, provides that "[a] case may not be removed under subsection (b)(3) on the basis of [diversity jurisdiction] more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." *Id.* § 1446(c).[4]

This statutory text expresses "a clear intent to compel rigorous enforcement" of its deadlines, limited only by its explicit exceptions. *Nutraceutical*, 586 U.S. at 193. Applying equitable tolling to either 30-day window in (b)(1) or (b)(3) would require adding a judicially made exception to Congress's detailed, express scheme of exceptions and carveouts, an action the Supreme Court has cautioned against. *See id.* at 194; *United States v. Beggerly*, 524 U.S. 38, 48–49 (1998); *Brockamp*, 519 U.S. at 352.

Next, we look to context. One relevant consideration for whether a deadline has "jurisdictional attributes"—like immunity to equitable exceptions—is where Congress placed it in the overall statutory scheme. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 439 (2011); *see also West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 721 (2022). The removal statutes, including § 1446, are nested within U.S. Code Title 28, Part IV, titled "*Jurisdiction* and *Venue*." (Emphasis Added). Indeed, as discussed above, whether a case is removable is intertwined with questions of whether and when the defendant had grounds to argue for federal jurisdiction. Although § 1446(b) may not be jurisdictional, its placement near and interrelation with the jurisdictional statutes suggests stricter enforcement. *Cf. Henderson*, 562 U.S. at 439; *see also United States v. Wong*, 575 U.S. 402, 411–12 (2015).

Finally, we look to precedent. Overwhelming authority provides that removal statutes—such as § 1446(b)—are to be strictly construed against removal out of respect for state sovereignty. *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) ("[S]tatutory procedures for removal are to be strictly construed."); *Shamrock Oil & Gas Corp. v. Sheets*,

---

[4]Congress added this last exception—the bad-faith exception to the one-year limit on removal of diversity actions—in 2011 as part of the Federal Courts Jurisdiction and Venue Clarification Act. Pub. L. No. 112-63, 125 Stat. 758 (2011). That amendment was intended "to resolve the conflict" over whether the one-year limit was subject to equitable tolling. *See* H.R. Rep. No. 112–10, at 15 (2011), *reprinted in* 2011 U.S.C.C.A.N. 576, 580. The language "makes clear that the exception to the bar of removal after one year is limited in scope." *Id.*

313 U.S. 100, 108 (1941) (explaining that language and policy of removal statutes "call[] for the strict construction of such legislation"); *Holston v. Carolina Freight Carriers Corp.*, 936 F.2d 573, 1991 WL 112809, at *3 (6th Cir. 1991) (unpublished table decision) (interpreting § 1446(b) and stating that "the statutes conferring removal jurisdiction are to be construed strictly"); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999) (interpreting § 1446(b) and observing that "statutes conferring removal jurisdiction are to be construed strictly because removal jurisdiction encroaches on a state court's jurisdiction"); *see also* 14C Wright & Miller § 3731 & n.62 (noting that "[t]he two 30-day time limitations in Section 1446 are mandatory" and collecting cases). "[S]trict construction does not allow a court to disregard the purpose of Congress." *United States v. Klingler*, 61 F.3d 1234, 1237 (6th Cir. 1995). Thus, we do not "snatch[]" cases from state courts "unless some clear rule demands it." *Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*, 954 F.3d 831, 837 (6th Cir. 2020) (citation omitted).

For these reasons, several district courts in this Circuit have rejected equitable exceptions as incompatible with a strict construction of § 1446(b). *See, e.g.*, *Gray v. Martin*, 2013 WL 6019335, at *6 (E.D. Ky. Nov. 13, 2013) (Thapar, J.) (noting that courts in this Circuit have consistently rejected invitations to engraft unwritten equitable exceptions into the removal statute); *Riley v. Ohio Cas. Ins.*, 855 F. Supp. 2d 662, 671 (W.D. Ky. 2012) (refusing to recognize a judicially crafted equitable exception to § 1446(b)'s one-year limitation for removal of actions based on diversity jurisdiction); *City of Albion v. Guar. Nat'l Ins.*, 35 F. Supp. 2d 542, 544 (W.D. Mich. 1998) ("Although not jurisdictional, the thirty-day period for removal is mandatory and must be strictly applied."); *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994) ("[A] defendant's failure to comply with the statute's thirty-day limitation is an absolute bar to removal regardless of whether the removal would have been proper if timely filed."). We agree—there is no equitable exception to § 1446(b)'s timing requirements.

The cases Enbridge cites in support of an equitable exception are not persuasive. For instance, some are factually distinct, like two multi-defendant cases in which every defendant except one filed a timely notice of removal but one defendant filed one day late. *Hernandez v. Six Flags Magic Mountain, Inc.*, 688 F. Supp. 560, 561 (C.D. Cal. 1988); *Farm & City Ins. v. Johnson*, 190 F. Supp. 2d 1232, 1237 (D. Kan. 2002). Others disfavor an equitable exception

because they resulted in remand to state court for untimely removal. *Brown v. Demco, Inc.*, 792 F.2d 478, 482 (5th Cir. 1986); *Holder v. City of Atlanta*, 925 F. Supp. 783, 786 (N.D. Ga. 1996). Enbridge's best case is *Loftin v. Rush*, 767 F.2d 800, 801, 805–06 (11th Cir. 1985), which held that a state court's improper entry of default judgment against the United States Navy, in derogation of federal-government immunity, warranted excusing a late removal. But this single, 39-year-old, distinguishable, and out-of-circuit case hardly constitutes a "clear rule" that "demands" an equitable exception here, *Nessel*, 954 F.3d at 837, especially considering the overwhelming weight of authority against it.

Accordingly, we hold that § 1446(b)'s time limitations are mandatory. When invoked in a timely motion to remand, these limitations leave no room for equitable exceptions. Enbridge's failure to comply with these mandatory rules requires remand.

IV.

For these reasons, we reverse the district court's denial of the motion to remand. We remand for the district court to enter an order remanding this case to Michigan's 30th Circuit Court for the County of Ingham.